**NONCONFIDENTIAL**

**23-2043, 23-2233, 23-2326**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**WONDERLAND SWITZERLAND AG,**

*Plaintiff-Cross-Appellant*

**v.**

**EVENFLO COMPANY, INC.,**

*Defendant-Appellant*

---

Appeal from the United States District Court for the District of Delaware in No. 1:20-cv-00727-JPM, Judge Jon P. McCalla, Sitting By Designation.

---

# APPELLANT EVENFLO COMPANY INC.'S PRINCIPAL BRIEF

---

Dated: November 1, 2023

Lauren E. Douville (ldouville@shb.com)
Aaron E. Hankel (ahankel@shb.com)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550

Sharon A. Israel (sisrael@shb.com)
Shook, Hardy & Bacon L.L.P.
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008

*Counsel for Defendant-Appellant*

| **U.S. Patent No. 7,625,043** | **U.S. Patent No. 8,141,951** |
|---|---|
| 1. A car seat for use in an automobile to transport a child, comprising: | 1. A child safety seat comprising:<br>a seat body; |
| a seat assembly defining a generally horizontal seat surface for supporting a child positioned thereon, said seat assembly including a pair of receptacles; and | an engaging board connected to the seat body, a tooth-shaped structure being formed on the engaging board;<br><br>a backrest movably disposed on the engaging board; and |
| a seat back having a locking mechanism for selectively detachably connecting said seat back to said seat assembly, said seat back including a rear support portion oriented in generally upright position when attached to said seat assembly, said seat back having a pair of attachment arms projecting generally perpendicularly outwardly relative to said rear support portion for engagement with said seat assembly so as to be received within corresponding said receptacles. | an engaging mechanism disposed between the engaging board and the backrest, the engaging mechanism comprising:<br><br>an engaging member pivotally connected to the backrest for engaging with the tooth-shaped structure; and<br><br>a driving device movably connected to the backrest, the driving device comprising:<br><br>a connecting member pivotally connected to a first end of the engaging member; and<br><br>a pulling member connected to the connecting member, for driving the first end of the engaging member to rotate relative to the backrest when the driving device moves to a releasing position, so as to disengage a second end of the engaging member from the tooth-shaped structure, and further for driving the first end of the engaging member to rotate relative to the backrest when the driving device |

| **U.S. Patent No. 7,625,043** | **U.S. Patent No. 8,141,951** |
| --- | --- |
| | moves to a locking position, so as to engage the second end of the engaging member with a positioning groove of the tooth-shaped structure, such that a height of the backrest relative to the engaging board is fixed;<br><br>wherein the backrest is capable of moving relative to the engaging board when the second end of the engaging member is disengaged from the tooth-shaped structure. |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2043, 2023-2233, 23-2326

**Short Case Caption** Wonderland Switzerland AG v. Evenflo Company, Inc.

**Filing Party/Entity** Evenflo Company, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/01/2023 Signature: /s/ Lauren E. Douville

Name: Lauren E. Douville

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Evenflo Company, Inc. | | Goodbaby International Holdings Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Morris, Nichols, Arsht & Tunnell LLP | Wilson Sonsini Goodrick & Rosati | Anita Liu<br>Lydia C. Raw |
| Jeremy A. Tigan<br>Baker & Hostetler | Jennifer A. Ward<br>Maxwell C. McGraw | |
| Jeffrey J. Lyons<br>John M. Mueller | B. Trent Webb<br>Emily R. Sosolik | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST ........ i
TABLE OF CONTENTS ........ iv
TABLE OF AUTHORITIES ........ vii
ABBREVIATIONS ........ xi
STATEMENT OF RELATED CASES ........ xii
JURISDICTIONAL STATEMENT ........ 1
STATEMENT OF THE ISSUES ........ 2
INTRODUCTION ........ 2
STATEMENT OF THE CASE ........ 4
I. Asserted Patents ........ 5
  A. The ’043 Patent ........ 5
  B. The ’951 Patent ........ 7
II. Evenflo’s Car Seats ........ 9
  A. Evenflo’s 4-in-1 Seats (EveryFit and EveryKid) ........ 9
  B. Evenflo’s 3-in-1 Seats (SafeMax, Evolve, and Transitions) ........ 14
III. District Court Proceedings ........ 16
  A. The District Court Did Not Construe Disputed Limitations of the ’043 Patent ........ 17
    1. The district court found Evenflo judicially estopped from clarifying the scope of a single “receptacle” and, by extension, a “pair of receptacles.” ........ 17
    2. The district court did not resolve the scope dispute for “attachment arms . . . for engagement.” ........ 19
  B. The District Court Adopted a “Plain and Ordinary” Definition of “Connected To” (’951 Patent). ........ 20
  C. Jury Trial ........ 22
  D. The District Court’s Permanent Injunction and Erroneous Judgment ... 23
SUMMARY OF THE ARGUMENT ........ 23
STANDARD OF REVIEW ........ 26
ARGUMENT ........ 27

IV. The DOE-Only Verdict of Infringement of Claim 1 of the ’043 Patent Should Be Reversed For Claim Construction Errors and Failures of Proof .27

A. The district court erred in failing to resolve claim construction disputes and denying JMOL of no infringement. ..............................................27

1. The accused products lack a “pair of receptacles” and a properly-instructed jury could not have found otherwise.............................28

2. The proper construction of “attachment arms . . . for engagement” is “attachment arms . . . for interlocking with or otherwise attaching to,” and the district court erred in refusing to instruct otherwise. ..........................................................................................34

3. Applying a proper construction, no reasonable jury could have found the accused products literally have attachment arms. .........37

4. Under a proper construction of “attachment arms . . . for engagement,” a reasonable jury could not have found infringement under the DOE.........................................................................................39

B. The seat back of the accused 4-in-1 products does not include the claimed “locking mechanism,” and a reasonable jury could not have found otherwise..........................................................................................44

V. The Infringement Verdict for Claims 1 and 5 of the ’951 Patent Should Be Reversed Because of An Erroneous Construction of “Connected To” and Unsupported testimony That A “Backrest” Is A “Headrest” ........................48

A. The district court erroneously construed the term “connected to.” .......49

1. A “pulling member connected to the connecting member” requires two separate parts.....................................................................51

2. Under the Correct Claim Construction, a Reasonable Jury Could Not Have Found that the Accused Products Have a “Pulling Member Connected to a Connecting Member.” ............................54

B. The District Court Erred in Denying JMOL of Noninfringement for the ’951 Patent Because the Accused Products Have a Movable Headrest, Not a “Backrest Movably Disposed on the Engaging Board.”..............55

VI. Permanent Injunction............................................................................57

A. The district court erred in granting injunctive relief that Wonderland did not seek, which this Court quickly and properly stayed pending appeal. ..........................................................................................58

B. The district court abused its discretion in finding irreparable injury to Wonderland based on speculative harms to Graco. ....59

C. Monetary damages were adequate. ....63

VII. Incorrent Amended Judgment ....64

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ....65

CERTIFICATE OF COMPLIANCE ....66

CONFIDENTIAL MATERIAL OMITTED

The material omitted at Appx36–37, Appx39 has been designated by Evenflo as confidential under the Stipulated Protective Order dated August 8, 2020, and contains confidential competitive, financial and business information of Evenflo.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
501 F.3d 1307 (Fed. Cir. 2007) ....................27

*ActiveVideo Networks, Inc. v. Verizon Comm'cns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................26, 59, 63

*Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*,
808 F.3d 1313 (Fed. Cir. 2015) ....................40, 42

*Apple Inc. v. Samsung Elecs. Co.*,
695 F.3d 1370 (Fed. Cir. 2012) ....................59

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) ....................62

*Asyst Techs., Inc. v. Emtrak, Inc.*,
402 F.3d 1188 (Fed. Cir. 2005) ....................48

*Atlanta Motoring Accessories, Inc. v. Saratoga, Techs., Inc.*,
33 F.3d 1362 (Fed. Cir. 1994) ....................42

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
181 F.3d 1291 (Fed. Cir. 1999) ....................40, 44, 45, 47

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ America Corp.*,
533 F.3d 1362 (Fed. Cir. 2008) ....................54

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................21, 25, 49, 52

*Bell Atlantic Network Servs., Inc. v. Covad Comm'cns Group, Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) ....................44

*In re Chambers Develop. Co., Inc.*,
148 F.3d 214 (3d Cir. 1998) ....................29

*Consol. Edison Co. v. Nat'l Labor Relations Bd.*,
305 U.S. 197 (1938)....................27

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
291 F.3d 1317 (Fed. Cir. 2002) ....................48

*Digital Biometrics, Inc. v. Identix, Inc.*,
149 F.3d 1335 (Fed. Cir. 1998) ....................30

*Dupree v. Younger*,
598 U.S. 729 (2023)....................28

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)....................58

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996) ....................51

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
535 U.S. 722 (2002)....................55

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005) ....................48

*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004) ....................51

*Genband US LLC v. Metaswitch Net. Corp.*,
861 F.3d 1378 (Fed. Cir. 2017) ....................58, 61

*Innove Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ....................37

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) ....................27

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) ....................50, 52

*Litton Sys. v. Honeywell, Inc.*,
140 F.3d 1449 (Fed. Cir. 1998) ....................39

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) ....................28

*Marra v. Philadelphia Hous. Auth.*,
497 F.3d 286 (3d Cir. 2007) ....................27

*Nature Simulation Sys., Inc. v. Autodesk, Inc.*,
50 F. 4th 1358 (Fed. Cir. 2022) ....................27

*Nichia Corporation v. Everlight Americas, Inc.*,
855 F.3d 1328 (Fed. Cir. 2017) ....................60, 62

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ....................23, 27, 29

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) ....................40

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................51, 53

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
472 F.3d 1338 (Fed. Cir. 2006) ....................48

*Regents of Univ. of Minnesota v. AGA Medical Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ....................49

*Riverwood International Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003) ....................27

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................26

*Texas Instruments, Inc. v. Cypress Semiconductor, Corp.*,
90 F.3d 1558 (Fed. Cir. 1996) ....................47

*The Chamberlain Gp., Inc. v. Lear Corp*,
516 F.3d 1331 (Fed. Cir. 2008) ....................30

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ....................59, 60

*Warner Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)....................40

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
992 F.3d 1366 (Fed. Cir. 2021) ....................................................................49

*Wisconsin Alumni Research Foundation v. Apple Inc.*,
905 F.3d 1341 (Fed. Cir. 2018) ....................................................................37

**Statutes**

28 U.S.C § 1292 ....................................................................................................1

28 U.S.C. § 1295(a)(1) ........................................................................................1, 5

28 U.S.C. §§ 1331 and 1338 ....................................................................................1

# ABBREVIATIONS

| TERM | DEFINITION |
|---|---|
| ’043 patent | U.S. Patent No. 7,625,043 |
| ’951 patent | U.S. Patent No. 8,141,951 |
| 3-in-1 seats | SafeMax, Evolve, Transitions |
| 4-in-1 seats | EveryFit, EveryKid |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, there have been no other appeals in or from the same civil action or proceeding. The following case may affect or be affected by this Court's decision in the present appeal: *Wonderland Switzerland AG v. Evenflo Company, Inc.*, Case No. 1:23-cv-00354-JPM (D. Del.).

## JURISDICTIONAL STATEMENT

This consolidated case involves two appeals (23-2043 and 23-2233). The first (23-2043) is an appeal under 28 U.S.C § 1292 from a permanent injunction. The second (23-2233) is an appeal from a final judgment. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1). Evenflo timely filed its notices of appeal on June 14 and July 28, 2023, respectively.

## STATEMENT OF THE ISSUES

1. Whether the judgment that claim 1 of the ’043 patent was infringed under the doctrine of equivalents should be reversed because the district court needed, but failed, to construe multiple disputed claim limitations, and there was no evidence to support the jury’s verdict.

2. Whether the judgment that claims 1 and 5 of the ’951 patent were infringed should be reversed where (a) the district erred in construing “connected to” in a manner inconsistent with this Court’s precedent and the intrinsic evidence, (b) Evenflo’s products do not include a “backrest capable of moving,” and (c) Wonderland did not assert claim 5 against Evenflo’s 3-in-1 products, yet the district court entered judgment of infringement against them.

3. Whether the district court abused its discretion in granting a permanent injunction where the infringement judgment should be reversed, no probative evidence of irreparable harm to Wonderland was presented, Wonderland failed to establish that money damages were inadequate, and the injunction was directed to a patent for which Wonderland did not seek injunctive relief.

# INTRODUCTION

The district court erred as a matter of law in its construction of claim terms, as well as submitting certain claim construction disputes to the jury. Under any construction, no reasonable jury could have found infringement. In addition, the district court abused its discretion by enjoining Evenflo based on speculative and alleged vicarious harms to Wonderland. The infringement verdict should be reversed and the injunction should be vacated.

Evenflo is a domestic manufacturer and seller of children's products, including car seats. The car seats at-issue on appeal are designed with three goals in mind: safety, simplification, and ease-of-use. Central to the design of each seat is the shell—a monolithic, L-shaped frame that includes the accused detachable booster and accused headrest when fully assembled. Evenflo's shell design is one of the primary reasons why Evenflo does not infringe either of Wonderland's patents.

First, the shells form a backrest that is incapable of adjustment or movement. Instead of an adjustable backrest, Evenflo's seats use a moveable headrest. A headrest is not a "backrest capable of moving," as recited in claim 1, so Evenflo cannot infringe the '951 patent. Evenflo does not infringe the '951 patent for another reason. The component that moves the accused headrest is formed of a single, injection molded part. Thus, even if a headrest were a backrest (it is not), no

reasonable jury could have found the adjustment mechanism to be a "pulling member connected to a connecting member" because a single part does not connect to itself.

Second, Evenflo's shell design makes it impossible for the detachable boosters to include a "pair of receptacles," as recited in asserted claim 1 of the '043 patent. The L-shaped shell includes a mount for the central front adjuster ("CFA"), the component that holds the slack of the car seat's internal harness. Having the CFA on the shell, as opposed to the booster, reduces parent error and avoids the need to disassemble and reassemble the harness whenever the booster is taken on and off the shell. Mounting the CFA on the shell also required Evenflo to design the lower half of the shell as a single, integrated component that fits into one, undivided space in each accused booster. A large, undivided cavity that is sized to receive a single, integrated shell—as opposed to a pair of receptacles that are each "sized to receive" corresponding attachment arms—does not infringe.

Without a pair of receptacles in the booster, there also is no "pair of attachment arms . . . for *engagement*" with the booster, as recited in claim 1. Indeed, the accused arms—structural rails or tubes that form a portion of the shell—do not even touch the detachable booster, let alone engage it. The reason is simple: they do not need to engage the boosters. The detachable boosters include only a lock for attachment, and the strength and fidelity of the seat comes from the shell alone, not

from a connection between the shell and the detachable booster. The jury never could have appreciated the significance of these unrebutted facts in view of the trial court's refusal to construe the term "engagement" and Wonderland's expert testimony that "engagement" means nothing more than to be "received," a separate limitation of the claim.

In addition to denying Evenflo's motion for judgment as a matter of law ("JMOL") or for new trial, the district court went many steps farther and enjoined Evenflo from making, using, or selling seats with the accused features, notwithstanding the lack of substantial evidence for the DOE-only verdict for one patent and Wonderland's decision not to move for injunctive relief for the other. Such draconian relief was an abuse of discretion, particularly in light of the district court's erroneous view of the law and assessment of the speculative or otherwise non-existent evidence. The injunction must be vacated.

## STATEMENT OF THE CASE

Wonderland Switzerland AG filed suit against Evenflo Company, Inc. in the United States District Court for the District of Delaware alleging that five different models of car seats infringed certain claims of the '043 and '951 patents. Appx0183–0279. The first two—branded as EveryFit and EveryKid—are known as Evenflo's 4-in-1 seats. The final three—branded as SafeMax, Evolve, and Transitions—are known as Evenflo's 3-in-1 seats.

The case initially was assigned to Judge Richard G. Andrews, who presided over the *Markman* proceedings. Appx0491–0535. On April 28, 2022, after summary judgment briefing was closed, the case was reassigned to Judge Jon P. McCalla, sitting by designation. Appx2914.

## I. <u>ASSERTED PATENTS</u>

### A. The ’043 Patent

The ’043 patent describes a car seat that can be used in multiple configurations. Appx0123–0146. The car seat includes “a seat assembly” for the child to sit on. Appx0142 at 5:52–60. It also includes a detachable “seat back” that can be separated from the seat assembly. Appx0143 at 7:25–31; Appx0132 at figs. 7, 8. When the seat back is separated from the car seat, the seat assembly can be used as a backless booster seat. *Id.*

The seat back attaches to the seat assembly by way of a pair attachment arms 41, which are received into a pair of corresponding receptacles formed by seat assembly 30. *See* Appx0143 at 7:46–50; Appx0144 at 9:48–53.



Fig. 7



Appx0143 at 8:1–15; Appx0129 at fig. 5. The end of each attachment arm 41 includes a spring-loaded latch 52 that is actuated by a switch 53. Appx0143 at 7:55–57. The latch 52 and switch 53 together form locking mechanism 50. Appx0128 at fig. 4; Appx0130 at fig. 6; Appx0143 at 7:25–31, 7:55–64. After the attachment arms are "received within the receptacles 34," "the spring-loaded locking mechanism 50 automatically lock[s] the attachment arms 41 into the proper position" by engaging with a corresponding notch in the seat assembly. Appx0144 at 9:48–53; Appx0143 at 7:25–28. In addition, "the ends of the attachment arms 41 are formed with an offset step 54 that engages a corresponding depression 34a in the receptacle 34 to prevent the attachment arms 41 from pulling straight rearwardly once latched into position." Appx0143 at 7:50–54. Taken together, locking mechanism 50 (pink below) and offset step 54 (circled in red) allow the attachment arms (green below) to engage with the seat assembly for attachment of the seat back to the seat assembly.




Appx0130–0131 at figs. 6, 6A.

### B. The ’951 Patent

The ’951 patent describes a car seat with a height-adjustable backrest. Appx0147–0160. Backrest 14 is “used for supporting the back of a child” and includes a body portion 17 and a headrest portion 15. Appx0157 at 2:42–51. The body portion 17 “is used for supporting the body of a child individually,” whereas the headrest portion 15 is “used for supporting the head of a child.” Appx0157 at 2:46–51. All disclosed embodiments of the backrest 14 include body portion 17, and there are no embodiments with headrest portion 15 alone.



FIG. 1

Appx0157 at 2:32-54; Appx0149 at fig. 1.

For height adjustment, the claims require an "engaging mechanism" that includes an "engaging member" and a "driving device that is movably connected to the backrest." Appx0159 at 6:51–57. The "driving device," in turn, is made up of two distinct components—a "connecting member" and "a pulling member *connected to* the connecting member." Appx0159 at 6:58–61 (emphasis added). As illustrated in Figure 4 below, the pulling member 36, such as a handle, connects to the separate connecting member 38 via two pillars 40 to allow for height adjustment of the entire backrest (body portion 15 and headrest portion 17). Appx0158 at 3:21–28.

Fig. 2




Appx0150 at fig. 2.

Notably, the structural details of the claimed driving device—namely, the requirement of a "connecting member" and "pulling member connected to the

connecting member"—were added by amendment during prosecution to overcome a prior art rejection based on U.S. Patent No. 7,452,031 to Woellert et al. ("Woellert"). Appx1005–1008. Woellert describes a car seat with various adjustable features, including independently adjustable headrest and backrest sections that are adjusted by way of a single component denominated at trigger 56. Appx2512–2533; Appx2527 at [0009]; *see also* Appx2519 at fig. 7. In response to a rejection based on the unitary trigger structure in Woellert, the '951 claims were amended to clarify that the claimed driving device is composed of *two* distinct components—a "connecting member" and a "pulling member connected to the connecting member." *See* Appx1002–1003, Appx1005–1008.

## II. EVENFLO'S CAR SEATS

### A. Evenflo's 4-in-1 Seats (EveryFit and EveryKid)

Evenflo's 4-in-1 seats support four modes of use: (1) rear-facing harness (infant), (2) forward-facing harness (younger toddler), (3) high-back booster (older toddler), and (4) no-back booster (older toddler). Appx5890–5891 at 800:20–801:1. The 4-in-1 seats have three main components—a shell, a removable booster, and a moveable headrest. Appx7344–7347 (shell); Appx7354–7356, Appx7358–7359 (booster); Appx7361–7362 (headrest); *see also* Appx7459.

***Shell.*** As shown below, the shell is an L-shaped, monolithic shell molded from plastic. It includes a mount for a Central Front Adjuster ("CFA") (**blue**) that

holds the slack of the internal harness and allows for easy adjustment to secure a child. Appx5794–5795 at 704:20–705:23; Appx7459. The shell also has two guiding horns (hereinafter "horns") (**green**) that assist with proper positioning of the booster onto the shell. Appx5842 at 752:9–15; Appx5794 at 704:2–2. The horns do not extend perpendicularly from the seat back. Appx7459; Appx5794 at 704:13–19; Appx5797–5798 at 707:5–708:5. Finally, the shell includes two structural rails (hereinafter "rails") (**orange**), which provide structural integrity *to the shell* in the event of a crash. Appx5796 at 706:13–707:2; Appx5765 at 675:22–25. By design, the rails do not contact any portion of the booster. Appx5798 at 708:6–18. Because the rails are designed to avoid contact with the booster, they are not configured to attach the shell to the booster. Appx5798 at 708:6–14.



Shell (front/side perspective)



Shell (side perspective)



Rails (angled side perspective)




Single rail (side perspective)

Appx7344; Appx7349; Appx7350; Appx7459.

***Booster.*** When assembled, the entire bottom part of the shell is received into the continuous cavity defined by the underside of booster. That cavity is sized to receive the entire bottom portion of the shell—not the rails. Appx5820–5821 at 730:22-731:11. The horns, in turn, help guide the booster into place by partially sliding into pockets (**red** arrows below) formed in the underside of the booster seat. Appx5793 at 703:23–704:12. Those pockets are adjacent and open to the large cavity that is sized to receive the entire bottom portion of the shell (shown below). Appx5821 at 731:12–25.





Top view (underside of booster)

Rear view of booster

Appx7459.

Because the rails and horns do not attach the shell to the booster, the booster includes a locking mechanism to connect itself to the shell. Appx5798 at 708:6–14; Appx5817–5820 at 727:23–730:7. The locking mechanism includes a handle, springs, and hooks that lock onto a metal rod (**green** below) on the shell. Appx5819–5820 at 729:5–730:2. In the 4-in-1 seats, the locking mechanism (handle, springs, and hooks, in red below) are positioned on the booster, not the seat back/shell. *Id*.





Booster bottom view
(locking mechanism in **red**)

Booster top view
(locking mechanism in **red**)




Shell (lock rod in **green**)

Appx7459; Appx7370.

***Moveable Headrest.*** The seat back of the seat, including the backrest, is not adjustable. Instead, the seat includes an adjustable headrest that moves along a backplate in the shell. Appx7361–7362; Appx5831 at 741:10–24. To adjust the height of the headrest, the seats include a single piece of molded plastic that allows the user to adjust the headrest height up or down. Appx7459; Appx5828–5829 at 738:20–739:8; Appx7486–7489; Appx7365–7366, Appx7368; Appx5827–5831 at 737:19–741:24. The adjustment handle is a single piece of plastic, and does not include two parts connected to each other. Appx7486–7489; Appx7365–7366.



4-in-1 Headrest



4-in-1 Handle

Appx7365; Appx7365.

### B. Evenflo's 3-in-1 Seats (SafeMax, Evolve, and Transitions)

Evenflo's 3-in-1 seats support three modes of use: (1) forward-facing harness (younger toddler), (2) high-back booster (older toddler), and (3) no-back booster (older toddler). Appx5973–5974 at 883:18–884:2. The 3-in-1 seats also include three main components—a shell, a booster, and a movable headrest. Appx7636; Appx7526; Appx7640; Appx7528; Appx7530; Appx7534; Appx5927 at 837:2–5; Appx5937 at 847:11–13.

***Shell.*** The shell includes a seat back area, which has extending from it two structural tubes (hereinafter "tubes") that hold a cross-connect structure for the seat's CFA, as shown below. *Id.*; Appx5942–5944 at 852:3-853:17; Appx5932–5933 at 842:24–853:17; Appx5943–5944 at 853:22–854:25. The tubes provide structural

strength to the shell. Appx5938–5939 at 848:17–849:3; Appx5942–5944 at 852:24–854:25.

***Booster.*** The booster has a single cavity with four inner walls forming the cavity, as shown below. Appx7636; Appx7530; Appx7527. When assembled, the single cavity (in **green** below) fits around the lower half of the shell, including the tubes and cross-connect structure (in **red** below) that holds the CFA (in **blue** below). Appx5941–5942 at 851:19–851:12; Appx5942–5944 at 852:24–854:25. The function of the tubes is to provide structure and strength to the shell. Appx5938–5939 at 848:17–849:15; Appx5942–5944 at 852:24–854:25. The tubes do not contact the booster base in any location, and they are not used to attach the backrest to the seat base.[1] Appx5880–5881 at 790:6–791:12; Appx5938 at 848:4–16.




Appx7636.

[1] Unlike the 4-in-1 seats, the locking mechanism in the 3-in-1 seats is part of the seat shell. Appx0781; Appx7636.

***Moveable Headrest.*** The shell includes a backrest, which does not move and cannot be adjusted. Appx7636; Appx7640; Appx5931 at 841:6–17. The seat also includes a moveable headrest that moves along a track formed in the backrest, similar to the 4-in-1 seats. Appx5927 at 837:12–24; Appx7536–7538. A single, injected-molded piece of plastic is used to facilitate adjustment of the headrest. Appx7893; Appx5932–5936 at 842:16–846:1, *see also* Appx4714–4733.

## III. District Court Proceedings

On January 13, 2023, a jury rendered a verdict, finding that (1) Evenflo's 3-in-1 and 4-in-1 seats infringe claim 1 of the '043 patent under the doctrine of equivalents; (2) Evenflo's infringement of the '043 patent was not willful; and (3) the 4-in-1 products infringe claims 1 and 5, but not claims 4 and 6, and the 3-in-1 products infringe claim 1, but not claim 4, of the '951 patent. Appx0107–0112. The jury awarded $4/unit and $0.50/unit as appropriate royalties for infringement of the '043 and '951 patents, respectively. Appx0111.

Following trial, the district court granted Wonderland's motion for permanent injunctive relief, denied the parties' cross-motions for judgment as a matter of law and for new trial, and granted-in-part Evenflo's motion to amend the judgment. Appx0001–0019; Appx0044–0065; Appx0113–0120.

### A. The District Court Did Not Construe Disputed Limitations of the ’043 Patent.

#### *1. The district court found Evenflo judicially estopped from clarifying the scope of a single “receptacle” and, by extension, a “pair of receptacles.”*

Claim 1 of the ’043 patent recites a “seat assembly including a pair of receptacles.” Appx0144 at 10:49–51. Both parties proposed constructions for the term “receptacle.” Appx0310. Wonderland proposed “a space defined by one or more surfaces sized to receive attachment arms,” and Evenflo proposed “a bounded space to receive and contain.” Appx0310; Appx0500 at 10:11–18.

The district court preliminarily construed “receptacle” as “bounded space sized to receive attachment arms,” Appx6940, but ultimately construed this term to mean “a three dimensional space sized to receive an attachment arm.” Appx0490. The district court never held that a “sized” space is defined without regard to physical boundaries. Appx0509–0510 at 19:18–20:22 (district court stating “[b]ut they, obviously, have bounded space limits in here”). The district court likewise never construed a “pair of receptacles.”

During summary judgment, both parties both asked the Court to resolve the dispute over the scope of the “pair of receptacles” limitation. Appx1058–1066; Appx0690–0695. The summary judgment dispute centered on two questions of claim scope—what “sizes” a receptacle and how does one of skill know when there are two? Evenflo argued that the seat assembly, *i.e.*, physical structure, must “size”

each receptacle to the shape of each alleged arm. Appx0690–0693; Appx2829–2831. Evenflo also argued that, at a minimum, physical structure of the seat assembly must separate each of the two receptacles from each other. *Id.* In other words, the two claimed receptacles cannot occupy one continuous space.

Wonderland argued that a "*pair* of receptacles" can exist in undivided portions of a single, continuous space of the seat assemblies, as shown below:






Appx2689–2694; Appx2829–2831. Wonderland also argued that Evenflo should be judicially estopped from arguing that a "receptacle" includes a "bounded space" because, by agreeing to a construction for spaces that are "sized," Evenflo had abandoned any argument that such spaces be "bounded." Appx2689–2694; Appx1058–1062; Appx2467; Appx2473–2479.

The district court ultimately sided with Wonderland, finding Evenflo judicially estopped from arguing that the "*pair of* receptacles" require "bounded" spaces in light of the agreed construction for a *single* "receptacle," which was a

"three dimensional space sized to receive an attachment arm." Appx3863–3864; Appx0490; Appx0088. The district court also permitted Wonderland's expert to testify at trial that the receptacles do not need to be bounded. Appx6077 at 987:17–18 ("[I]t doesn't have to be bounded. That was rejected."); Appx6121 at 1031:8–14 (same); Appx6090–6091 at 1000:22–1001:25 (overruling Evenflo's objection regarding "rejected" construction).

*2. The district court did not resolve the scope dispute for "attachment arms . . . for engagement."*

Claim 1 of the '043 patent also requires a "pair of attachment arms . . . for engagement with the seat assembly." Appx0144 at 10:58–60. The district court preliminarily construed "engagement" as "interlocking," because that term in the mechanical arts "has a meaning and the meaning is not interaction," as Wonderland originally proposed. Appx0513 at 23:18–22. However, the district court ultimately sided in favor of the plain and ordinary meaning for "engagement" at the claim construction hearing, and instructed the parties to revisit the dispute on summary judgment "if it makes a difference to something." Appx0534 at 44:1–7.

Following Judge Andrews's guidance, on summary judgment, Evenflo renewed its argument that "engagement" in the context of the '043 patent requires "interlocking with or otherwise attaching to." Appx0693–0695. In response, Wonderland argued for the first time that "engagement" means to be "moved into position"—a user action, rather than a structural attribute of the claimed attachment

arms—based solely on the opinions of its technical expert, Dr. Kimberly Cameron. Appx2697 (citing Appx1462–1463).[2]

After summary judgment briefing, the case was reassigned to Judge McCalla. Judge McCalla denied Evenflo's motion, and adopted the plain and ordinary meaning, because, for reasons never explained in his order, "a reasonable jury could find that the attachment arms do engage under the term's plain and ordinary meaning." Appx3864–3868.

### B. The District Court Adopted a "Plain and Ordinary" Definition of "Connected To" ('951 Patent).

Claim 1 of the '951 patent recites a height-adjustable backrest that is adjusted, in part, with a "connecting member" and a "pulling member *connected to* the connecting member." Appx0159–0160 at 6:46–7:8 (emphasis added). As noted above, the applicant amended the original claims to require *two* components—a pulling member connected to a connecting member—during prosecution to distinguish over cited prior art. Appx1002–1003; Appx1005–1008.

During summary judgment, both sides moved to clarify the scope of the "connected to" limitation. For its part, Wonderland argued that a single piece can be two pieces "connected to" each other. Appx1043–1049 (Wonderland arguing that

---

[2] Notably, during summary judgment, Wonderland acknowledged that its expert had not offered infringement opinions under Evenflo's proposed construction. Appx2695; Appx2697 (citing *Markman*).

the scope of "'connected to' in the '951 Patent covers . . . a single component with portions 'connected to' each other"). Evenflo argued two separately claimed components "connected to" each other must be separate components, relying on the specification, prosecution history, and *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP,* 616 F.3d 1249 (Fed. Cir. 2010) and its progeny. *Id.* (where the claim recited a "spring means connected to said hinged arm," rejecting patentee's "assertion that the spring means and the hinged arm can be the same structure [because that argument] renders the asserted claims nonsensical").

In denying the parties' competing motions, the district court found that the "plain and ordinary meaning of 'connected to' can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material" and that "it is not a requirement that there be a discrete and readily-determinable boundary between the connected elements, so long as it can be determined that the elements are distinct." Appx3878–3881. The district court labeled *Becton* and progeny as unconvincing and noted, in support of its decision, the Delaware River can be characterized as "connected to" the Delaware Bay. Appx3880.

During trial, the court asked for further briefing, and instructed the jury that "connected to" as used in the '951 patent meant:

> [P]lain and ordinary meaning. "Connected to" can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material.

Appx0088; App4494–4496.

### C. Jury Trial

At trial, the parties presented to the jury samples of the seats, as well as schematics, computer-assisted design ("CAD") drawings, and testimony about the same. *See, e.g.*, Appx7343–7540; Appx7634–7640. Trial testimony included testimony from Wonderland's infringement expert, Dr. Cameron. For claim 1 of '043 patent, Dr. Cameron testified that every limitation was literally met by the accused seats, and the accused products also met the "attachment arms . . . for engagement" limitation under the DOE, and the 4-in-1 products met the "seat back having a locking mechanism for selectively detachably connecting" under the DOE. Appx6064–2222 at 974:7–1132:4; Appx6097–6112 at 1011:07–1023:13 (4-in-1 seats "arms" testimony); Appx6084–6093 at 994:18–1003:1 (4-in-1 seats "locking mechanism" testimony); Appx6150–6158 at 1060:10–1068:20(3-in-1 seats "arms" testimony). Evenflo's expert, Mr. Campbell, disagreed. Appx6492–6497 at 1402:7–1407:11; Appx6525 at 1435:2–13; Appx6525–6531 at 1435:18–1441:5; Appx6534–6541 at 1444:1–1451:21; Appx6547–6556 at 1457:15–1466:23; Appx6423–6497 at 1333:4-1407:12; Appx6524–6556 at 1434:4–1466:23. Dr. Cameron also testified that Evenflo's seats infringed the '951 patent, but did not present any testimony for

the "backrest" or "pulling member connected to the connecting member" limitations of the '951 patent under the DOE.

### D. The District Court's Permanent Injunction and Erroneous Judgment.

After trial, Wonderland moved for a permanent injunction with respect to the '043 patent only, but the district court nonetheless permanently enjoined *all* accused features for *both* asserted patents. Appx0019. Evenflo sought an emergency stay of the injunction order, for the reasons stated therein, and this Court stayed the injunction only as it relates to the '951 patent. Order at D.I. 21 on 8/16/2023. Following Evenflo's motion to amend the judgment under Rule 59(e) to comport with the jury's verdict, the district court entered an amended final judgment on July 24, 2023, which finds the 3-in-1 seats infringe unasserted claim 5 of the '951 patent. Appx0121–0122.

## SUMMARY OF THE ARGUMENT

The district court erred as a matter of law and failed to instruct the jury on the proper scope of multiple limitations of the '043 patent. Appx0088. This was error under *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Further, under either the district court's constructions or proper constructions, a reasonable jury could not have found infringement.

First, the district court erred as a matter of law, refusing to clarify its construction of "a pair of receptacles," which it defined as "a three dimensional

space sized to receive an attachment arm," without further defining how the seat assembly "size[s]" a receptacle or how to determine when there are a pair of receptacles. Relatedly, the district court erred by judicially estopping Evenflo from presenting argument that a receptacle must be "bounded" along some dimensions and from disputing Wonderland's expert testimony that a receptacle need not be "bounded." Under any construction, a single space covering two alleged attachment arms cannot meet the "pair of receptacles" limitation, and no reasonable jury could have found otherwise.

Second, the court repeated its inaction, magnifying the problem, when Evenflo requested a construction for "attachment arms . . . for *engagement*." The court refused to resolve the scope dispute—during both claim construction and summary judgment—and instructed the jury that "engagement" has a "plain and ordinary meaning." Had the district court given the term its correct meaning, which is "to interlock or attach to," no reasonable jury could have found that the alleged attachments arms, which do not touch the booster, "engage" with it. With no literal infringement, a reasonable jury also could not have found infringement under the DOE, because "attachment arms" that do not touch the booster necessarily are not equivalent to arms that interlock with or attach to the booster, and there was no evidence at trial to the contrary.

The district court also erred in denying Evenflo's motion for JMOL with respect to the '043 patent and 4-in-1 products for another reason. The claim recites a "seat back having a locking mechanism for selectively detachably connecting," but the locking mechanism of the 4-in-1 seats is on the seat assembly, not the accused seat back. The 4-in-1 products do not literally meet this claim limitation, and the claim limitation, requiring the locking mechanism on the seat back, would be vitiated under the DOE if a mechanism on the seat assembly were found to infringe.

The district court further erred in its construction of "connected to" for the '951 patent, and the verdict based on that erroneous construction demands reversal. Specifically, the court instructed the jury that "'connected to' can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material." Appx0088. This definition is not supported by the claims, prosecution history, or this Court's precedent. *Becton*, 616 F.3d at 1254–56 (one thing "connected to" another invokes a presumption of two distinct structures, and district court erred in holding that term could be met by a single structure). In view of the unambiguous disclosures in the patent specification and prosecution history, as well as the fact that the accused component is a single piece of molded plastic, no reasonable jury could have found infringement of the '951 patent.

Likewise, the final judgment of infringement should be reversed for the ’951 patent because the claims require a “backrest capable of moving,” and Evenflo’s accused products only have adjustable headrests. Appx7459; Appx7636. A headrest is not a backrest, and Wonderland’s expert did nothing to explain how the accused headrests support a child’s back consistent with the descriptions in the ’951 patent.

Finally, the district court abused its discretion by permanently enjoining Evenflo from infringing both asserted patents by (1) misapplying this Court’s well-established law requiring that irreparable harms be personal to the patent owner, and (2) wrongly equating monetary damages with irreparable harm. *ActiveVideo Networks, Inc. v. Verizon Comm’cns, Inc.*, 694 F.3d 1312, 1338 (Fed. Cir. 2012) (determining that plaintiff is harmed each time the infringing service is sold, and that harm is readily quantifiable with a royalty for each relevant Verizon subscriber). In addition, the district court abused its discretion by entering an injunction with respect to the ’951 patent, which was not the subject of Wonderland’s requested relief. For these reasons, Evenflo is entitled to reversal of the denial of JMOL and vacatur of the injunction.

## STANDARD OF REVIEW

Claim construction is an issue of law reviewed de novo with underlying factual findings, if any, reviewed for clear error. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325–26 (2015). The law of the Third Circuit applies to

the district court's denial of JMOL, *see Riverwood International Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003), so the standard of review here is de novo. *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

Infringement is a question of fact, and a jury's findings on those questions are reviewed for substantial evidence. *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000), and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).

## ARGUMENT

### IV. THE DOE-ONLY VERDICT OF INFRINGEMENT OF CLAIM 1 OF THE '043 PATENT SHOULD BE REVERSED FOR CLAIM CONSTRUCTION ERRORS AND FAILURES OF PROOF

#### A. The district court erred in failing to resolve claim construction disputes and denying JMOL of no infringement.

"When the meaning or scope of a patent claim is disputed by litigants, the judicial role is to construe the claim as a matter of law, on review of appropriate sources of relevant information." *Nature Simulation Sys., Inc. v. Autodesk, Inc.*, 50 F. 4th 1358, 1363 (Fed. Cir. 2022); *O2 Micro*, 521 F.3d at 1362–63. "[I]n a case tried to a jury, the [district] court . . . should not give such task to the jury as a factual

matter." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975, 978 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

Here, the district court erred as a matter of law, refusing to resolve scope disputes concerning the "pair of receptacles" and "attachment arms . . . for engagement" and putting these purely legal issues to the jury. Appx3861–3871 (summary judgment order); *see also Dupree v. Younger*, 598 U.S. 729, 736 (2023) (purely legal issues resolved at summary judgment are preserved for appellate review). The district court then compounded its error by denying JMOL of no infringement based on these limitations for all accused seats, and denying JMOL of no infringement based on the "seat back having a locking mechanism for selectively detachably connecting" limitation for the 4-in-1 seats. Appx0044–0065.

1. *The accused products lack a "pair of receptacles" and a properly-instructed jury could not have found otherwise.*

The trial evidence showed that Evenflo's accused seats do not have "a seat assembly including a *pair* of receptacles" because the accused "receptacles" are portions of a large, continuous cavity devoid of the structural "sizing" required by the claim. One continuous space is not a pair of spaces each "sized" to receive an attachment arm, and no reasonable jury could have found that the accused boosters include "a pair of receptacles."

Claim 1 of the '043 patent recites a "seat assembly including a pair of receptacles." Appx0144 at 10:50-51. The '043 patent describes that the pair of

receptacles are "formed in the seat assembly," and the district court construed a single "receptacle" as "a three dimensional space sized to receive an attachment arm." Appx0490; Appx0143 at 7:45–49. When the parties disputed on summary judgment what it means to be "sized" to receive an arm, the district court did not resolve the dispute. Appx0690–0693; Appx3862–3864. Specifically, the district court did not clarify whether the accused seat assembly must have two spaces—defined by the seat assembly—or whether each space must be fitted by structure to each alleged attachment arm. This was error. *O2 Micro*, 521 F.3d at 1362–63 (error for court not resolve scope disputes).

The district court erred again when it held that Evenflo was judicially estopped from arguing that the accused seats lack a "pair of receptacles" because the alleged receptacles were not "bounded" on their innermost sides by any structure of the seat assembly. Appx3863–3864. Judicial estoppel did not apply at least because Evenflo never successfully argued inconsistent claim constructions. *See In re Chambers Develop. Co., Inc.*, 148 F.3d 214, 229 (3d Cir. 1998) (judicial estoppel precludes a party from successfully arguing a position, while arguing something else later). Evenflo originally proposed that a "receptacle" is a "bounded space to receive and contain." Appx0311. The district court did not adopt that construction, so Evenflo did not succeed. Instead, the court adopted a construction with overlapping scope, namely "a three dimensional space *sized* to receive an attachment arm." Appx0509

at 19:18–21 (Wonderland counsel agreeing that Evenflo believed a "three-dimensional space" captured a "bounded space"); Appx0500 at 10:11–18 (Wonderland agreeing that the receptacle "is a bounded space"); Appx0510 at 20:18–19 (district court stating that the inventors "obviously, have bounded space limits in here"). Because a "sized" space necessarily must be "bounded" along some dimensions, Evenflo's proposed and agreed constructions were consistent, not inconsistent, with each other.

The court's inaction on claim construction,[3] coupled with its estoppel decision, led to additional errors at trial. Specifically, the court permitted Wonderland's expert to testify that each alleged "receptacle" was not required to be "bounded" along any dimension, effectively eliminating the "pair" and "sized" limitations altogether. Appx6077 at 987:15–18 ("[I]t doesn't have to be bounded. That was rejected."); Appx6121 at 1031:8–14 (same); Appx6090–6091 at 1000:22–1001:25 (overruling Evenflo's objection regarding "rejected" construction). Thus,

[3] The court's failure to resolve this dispute is particularly troubling in view of the surrounding context of the claims, including the "pair of attachment arms" that are received by the "pair of receptacles." The "pair" terminology from both of these related limitations should carry the same meaning, which necessarily requires two receptacles that are specifically sized to receive the corresponding attachment arms. *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1345 (Fed. Cir. 1998) ("Whatever interpretation we assign should encompass both uses because the same word appearing in the same claim should be interpreted consistently."); *The Chamberlain Gp., Inc. v. Lear Corp*, 516 F.3d 1331, 1337–39 (Fed. Cir. 2008) (vacating injunction where district court erred in applying inconsistent construction to the word "code" in the claim).

the jury was left to determine (1) whether "sized" spaces require physical boundaries or none at all, and (2) whether a "pair" of receptacles is two spaces, each space fitting one arm, or one space that fits two arms. In both cases, the only correct option is the first option.

No rational juror could have found that the boosters include a "pair of receptacles." Appx4800; Appx4940–4948. (Evenflo's Rule 50(a) and Rule 50(b) motions). Indeed, at trial, Wonderland read the "pair of receptacles" on a single cavity situated on the underside of boosters. As demonstrated at trial (and depicted below), the cavities are formed only by a front wall, top wall, bottom wall, and two side walls opposing each other. Appx7459; Appx7636.

**3-in-1 Seats**



**4-in-1 Seats**



There is no structure that divides the continuous space, let alone in a way that is sized to the accused attachment arms. Appx5940–5941 at 850:17–851:12; Appx5942–5943 at 852:24–853:17; Appx5943–5944 at 853:22–854:25; Appx7636; Appx7459. Wonderland's expert, Dr. Cameron, also did not identify any structures

in the cavities of Evenflo's seats that separate or "size" the space to the size of the alleged attachment arms.[4] Appx6120–6221 at 1030:9–1031:6 (3-in-1 seats); Appx6077–6081 at 987:6–991:1 (4-in-1 seats); Appx7795 (4-in-1 seats); Appx5798 at 708:6–14; Appx7480–7485 (4-in-1 rails sit below the top wall of the booster); Appx7459.

Moreover, it is physically impossible for the continuous cavities in Evenflo's seats to include spaces specifically sized to receive the accused attachment arms. In Evenflo's 3-in-1 products, the portion of the seat shell that first enters the cavity is a cross-connect structure (circled below), which spans the continuous width of booster. Appx5940–5941 at 850:17–851:12; Appx5942–5943 at 852:24–853:17; Appx5943–5944 at 853:22–854:25. In Evenflo's 4-in-1 seats, the entire lower half of the shell, which is one integrated unit, fits into the booster, and there is no space in between the structural rails for the booster. Appx5821 at 731:6–11; Appx7459. Thus, if Evenflo's boosters included spaces "sized" to the alleged attachment arms, the cross-connect (3-in-1s) and shell (4-in-1s) would not fit into the booster. *Id.*; Appx5944 at 854:20–22.

[4]Although, Dr. Cameron briefly mentioned "lip[s]" or "slot[s]" on the top wall of the cavity of the 3-in-1s, she offered no evidence that the lips or slots receive the alleged arms, as required by the construction. Appx6121–6122 at 1031:11–1032:2. In fact, Evenflo's expert demonstrated they do not. Appx6550–6551 at 1460:22–1461:24.

| **3-in-1 Seats** | **4-in-1 Seats** |
|---|---|
|  Appx7636. |  Appx7459. |

Notably, during trial, Wonderland's expert admitted that if you look at the accused boosters from the rear—a vantage point that should have showed receptacles if they existed—"you can't see any structures" and "[i]t gives you the impression that this is a giant square hole." Appx6080–6081 at 990:19–991:1. Dr. Cameron's "impression" is, in fact, reality. The seats objectively include only a single, continuous space—in other words, a single "giant square hole," as Wonderland's expert put it. No reasonable jury could have found otherwise.

*2. The proper construction of "attachment arms . . . for engagement" is "attachment arms . . . for interlocking with or otherwise attaching to," and the district court erred in refusing to instruct otherwise.*

The district court also erred as a matter of law by refusing to construe "attachment arms . . . for engagement," and giving it its plain and ordinary meaning. Properly instructed, no reasonable jury could have found DOE infringement.

Claim 1 of the '043 patent requires a "pair of attachment arms . . . for engagement with the seat assembly." Appx0144 at 10:58–60. During claim construction, the parties disputed the scope of the term "engagement," and despite preliminarily construing the term as "interlocking," the court adopted the "plain and ordinary meaning" and instructed the parties to re-raise the dispute on summary judgment "if it makes a difference to something." Appx0490; Appx0534 at 44:1–7.

After Wonderland's technical expert issued her opening infringement report expressing her opinions that "engagement" includes "receiv[ing]" or "mov[ing] into position" (*see* Appx2697), Evenflo accepted the district court's invitation and renewed the dispute on summary judgment. Specifically, Evenflo proposed that "for engagement" means "for interlocking with or otherwise attaching to." Appx0693. Evenflo's construction was based on the intrinsic evidence, and it was error for the district court to send the dispute to the jury.

The '043 patent describes "engagement" by reference to an "offset step 54" on each attachment arm "that engages a corresponding depression 34a in the

receptacle 34 to prevent the attachment arms 41 from pulling straight rearwardly once latched into position." *See* Appx0143 at 7:50–54; Appx0131 at fig. 6A. As shown below, the attachment arms "engage" by interlocking offset 54 with a corresponding depression 34a in the seat assembly to restrict relative movement.

Fig. 6A




Appx0131 at fig. 6A.

Each additional example of "engagement" in the patent also describes components that interlock with or attach to each other. For example, the patent describes a car seat headrest that has "channels 42 formed with a retainer clip 42a that *engages* a protrusion (not shown) on the lower end of the support rails 22 *to prevent the head rest 20 from being removed* from the seat back 40 once installed." Appx0142 at 6:22–30 (emphasis added); *see also* Appx0125 at fig. 1; Appx0133 at fig. 9. The '043 patent also describes "engagement" between a recline paddle 65 and paddle trap members 62, 63 because "recline paddle 65 is formed as an elongated

member positioned laterally across a cavity in the base member 15." Appx0143 at 8:42–62; Appx0144 at 9:1–10 (describing "push[ing] the paddle 65 back into *engagement* with the selected step 18 on the stepped ramp 17, *thus locking* the recline adjustment mechanism 60 in place") (emphasis added); Appx0144 at 9:33–55. These repeated uses of "engagement" to describe interlocking or attaching components together, along with Evenflo's expert testimony that the plain and ordinary meaning of "engagement" is "to interlock," demonstrates that "engagement" should have been defined as "for interlocking with or otherwise attaching to." Appx6552–6553 at 1462:12–1463:4.

Wonderland, for its part, never identified a specific meaning. During summary judgment, Wonderland argued "engagement" means "move into position," which in the context of the claims, is an action, not a structural feature of an "attachment arm." Appx2697. Then at trial, Wonderland's expert, Dr. Cameron, suggested that this limitation has many different meanings, including "guiding" or "stiffening." Appx6102 at 1012:12–16. Dr. Cameron also testified that "engagement" means having arms "inside the receptacle," or simply putting the booster on the seat shell. Appx6106 at 1016:12–21. She also stated that "engagement" means allowing the seat to be assembled. Appx6107 at 1017:4–10; *see also* Appx6121–6122 at 1031:20–1032:2. Not once did Dr. Cameron explain why one of skill in the art would agree with her varied interpretations, some of which merely parroted other

limitations of the claim, *e.g.*, "to be received." *See Innove Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (separate claim terms are presumed to carry different meaning).

The district court erred by refusing to resolve this legal dispute over the scope of the claim by submitting it to the jury as a question of fact. Appx6107–6108 at 1017:11–1018:13; Appx6106 at 1019:15–21; Appx6109–6110 at 1019:22–1020:15; *see also Wisconsin Alumni Research Foundation v. Apple Inc.*, 905 F.3d 1341, 1348–50 (Fed. Cir. 2018) (determining that expert's testimony of the "ordinary" meaning was clearly incorrect in the context of the patent and reversing denial of JMOL motion seeking to overturn verdict). The court should have resolved the scope dispute on claim construction, or summary judgment, as promised. And the jury should have been given instructions of the legal definition of the term. Without such guidance from the district court, the judgment must be reversed.

*3. Applying a proper construction, no reasonable jury could have found the accused products literally have attachment arms.*

***Evenflo's 3-in-1 Seats***. For Evenflo's 3-in-1 seats, the evidence at trial showed that the accused attachment arms (tubes) do not engage, let alone touch, the seat assembly. Appx6237–6238 at 1147:24–1148:1; Appx5947–5948 at 857:2–858:1; Appx5938 at 848:4–16; Appx6151 at 1061:2–10. The evidence at trial also demonstrated there is a designed-in gap between the tubes and booster. Appx5880 at 790:6–23. In addition, the evidence further showed that the tubes are cylindrical

and lack any structure, e.g., grooves, notches, depressions, or protrusions, for attachment or interlocking with the removable booster. Appx7636; Appx6156–6158 at 1066:2–1068:13 (failing to identify any structure of the tubes for engaging the booster). In fact, the ends of the tubes fit into the single cross-connect of the shell, not any structure of the booster. Appx7636. Thus, the jury was correct to find no literal infringement for these seats.

***Evenflo's 4-in-1 Seats.*** Similarly, for the 4-in-1 seats, the accused attachment arms (rails and horns) do not literally meet any reasonable definition of an "attachment arm . . . for engagement." Appx6101 at 1011:9–15; Appx0144 at 10:58–60. The rails do not even touch the booster seat, let alone engage mechanically. Appx5798 at 708:6–14. The rails also have a smooth and flat surface with no structure to attach to the booster. Appx7459; Appx7350. The function of the rails is to reinforce the shell during a crash. Appx5765 at 675:22–25; Appx5796 at 706:13–21; Appx5797–5798 at 707:5–708:3; Appx5798 at 708:6-14. Likewise, the horns of the 4-in-1 seats, which Wonderland argued is another part of the attachment arms, do not "engage" or interlock with the booster.[5] Appx6101 at 1011:9–15; Appx5798 at 708:6–14. The horns function to guide the booster on the shell. Appx5842 at 752:9–15; Appx5794 at 704:2–12. Thus, the lead engineer of

[5] The claim requires that the attachment arms project generally perpendicularly from the seat back. For obvious reasons, the guide horns in Evenflo's 4-in-1 seats do not project perpendicularly from the seat back. Appx7459.

the 4-in-1 seats testified that the rails and horns (1) are separately formed, (2) not connected to each other, (3) have separate functions, and (4) project from different locations. *See* Appx5765 at 675:22–25; Appx5794 at 704:2–9; Appx5796 at 706:13–21; Appx5797–5798 at 707:5–708:18; Appx5842 at 752:9–15; Appx7459 (showing the rails project *into* the base of the shell from the alleged rear support portion while the horns project *from* the base of the shell). Nothing in the ’043 patent supports a verdict that the claimed attachment arms “engage” with the booster or can have multiple, disconnected and functionally-independent components.

For these reasons, the jury was correct to find no literal infringement for the 4-in-1 seats.

*4. Under a proper construction of “attachment arms . . . for engagement,” a reasonable jury could not have found infringement under the DOE.*

Based on the above, the jury correctly found no literal infringement of the ’043 patent, but incorrectly found DOE infringement. The district court’s failure to construe the disputed “engagement” term necessarily propagated throughout the entire trial, and invariably impacted the jury’s verdict of infringement under the doctrine of equivalents.[6] *See Litton Sys. v. Honeywell, Inc.*, 140 F.3d 1449, 1455

[6] As noted above, the only DOE position advanced for the 3-in-1 seats was “attachment arms . . . for engagement.” The only DOE positions for the 4-in-1 seats with respect to the ’043 patent were “attachment arms . . . for engagement” and “locking mechanism for selectively detachably connecting.”

(Fed. Cir. 1998) (vacating DOE verdict because, "[u]nder an element-by-element analysis, an error in claim construction propagates into the jury's equivalence determination"); *see also Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1297 (Fed. Cir. 1999) (reversing district court's refusal to grant JMOL because "a correct infringement analysis requires a correct claim interpretation").

Here, the Court should reverse because there was no evidence to support Wonderland's expert's conclusory testimony that the "engagement" limitation was met under the DOE. Moreover, under the all-elements rule, "[t]he determination of equivalence should be applied as an objective inquiry on an element-by-element basis." *Warner Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). The "patentee, bearing the burden of showing equivalence, cannot merely point to other claim limitations to satisfy the doctrine of equivalents. Doing so runs afoul of the 'all-elements rule' articulated in *Warner-Jenkinson*." *Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015). While infringement under the DOE is a question of fact, compliance with the all-elements rule is a question of law that this Court reviews de novo. *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005).

At trial, Dr. Cameron attempted to show equivalence for the "attachment arms" limitation by way of the "function-way-result" test, but she failed to show equivalence on the broader phrase "attachment arms. . . for engagement." Appx6111

at 1021:6–23. Her analysis therefore fell short of the requirements imposed by this Court to provide specific, element-by-element opinions that demonstrate equivalence of all elements of the claim. Wonderland's expert testimony is summarized below:

| 3-in-1 Seats | 4-in-1 Seats |
|---|---|
| **Function:** "So it's the structural integration from the arms that are *received into* the receptacle. So that's the function." Appx6157–6158 at 1067:18–1068:6 (emphasis added). | **Function:** "So here the function again is just that you want to be able to structurally integrate those attachment arms *so that's received in the receptacles*. That's the function…." Appx6111 at 1021:6–10 (emphasis added). |
| **Way:** "The way, of course, is that you have those arms that *extend away* from the seat back into the seat assembly and the seat bottom…." Appx6158 at 1068:7–10 (emphasis added). | **Way:** "[A]nd the way that both the claim language does it and the 2C is that you have those arms that *extend outwardly away* from the seat back into the seat assembly, the seat bottom." Appx6111 at 1021:10–14 (emphasis added). |
| **Result:** "[A]nd of course, the result is the same is that you have that *structural stability* for the car seat when the seat back is locked in the seat bottom." Appx6158 at 1068:7–13 (emphasis added). | **Result:** "And the result, of course, is the same too, which is that you provide that *structural stability* to the car seat when the seat back is assembled to the seat bottom." Appx6111 at 1021:15–18 (emphasis added). |

Dr. Cameron's threadbare DOE analysis for this term was enabled by the district court's failure to construe the term, and ultimately ran afoul of this Court's "all-elements rule" by repeatedly conflating "engagement" with separate and distinct elements of the claim. For example, Wonderland's expert identified the "function" of "engagement" as being "received in the receptacles." Appx6111 at 1021:6–10.

But "engagement" is a separate requirement of the claim from "so as to be received." On cross-examination, Dr. Cameron conceded that her opinions "read [these distinct requirements] together" (Appx6242 at 1152:16–20), and thus violated the all-elements rule.

Likewise, Dr. Cameron's "way" analysis was premised on the alleged arms "extend[ing] outwardly away from the seat back." Appx6111 at 1021:10–14. Yet, once again, Wonderland's expert opinions simply pointed to other limitations of the claim to establish DOE infringement—namely, "a pair of attachment arms projecting generally perpendicularly outwardly relative to said rear support portion." Appx0144 at claim 1.

Dr. Cameron also provided insufficient testimony for the "result" of the "engagement" feature by pointing to the "lock" element of the accused seats, which is set forth elsewhere in the claim and accomplished with a different structure in the accused product. Appx6158 at 1068:7–13; *see Atlanta Motoring Accessories, Inc. v. Saratoga, Techs., Inc.*, 33 F.3d 1362, 1366–67 (Fed. Cir. 1994) (ordering entry of judgment of noninfringement because the accused device performed the same function but with different structures and therefore in different ways, avoiding equivalence). This is precisely what this Court's precedent states cannot form the basis for a finding of infringement under DOE. *Advanced Steel*, 808 F.3d at 1320 ("point[ing] to other claim limitations . . . runs afoul" of the rule).

What is more, there was no evidence that the accused products met the function, way, and result test that Dr. Cameron articulated at trial. Thus, even if her test was correct (it was not), the evidence did not support it.

For example, there was no evidence at trial that the "function" of the tubes (3-in-1s) or rails (4-in-1s) is being "received." Simply because a booster can be placed atop the lower half of the shell does not mean the function of the tubes and rails suddenly transforms to a "receiving" function when the booster is placed on top. Rather, the unrebutted testimony at trial proved the tubes and rails function to reinforce the seat shell. Appx5765 at 675:22–25 (4-in-1 seats); Appx5796 at 706:13–21 (4-in-1 seats); Appx5880–5881 at 790:6–791:12; Appx5938 at 848:4–16.

Similarly, for at least the 4-in-1 seats, there was no evidence that the horns met Dr. Cameron's "way" test. Appx6111 at 1021:10–14 (4-in-1). Indeed, the horns did not "extend outwardly away from the seat back," even though she claimed this was the "way" the attachment arms accomplish their function. Appx6111 at 1021:10–14 (4-in-1); Appx7459. Furthermore, if the "seat back" includes the lower half of the monolithic shell, then the rails do not "extend outwardly away from the seat back;" rather, they are nested within it. Appx7459.

Finally, there was no evidence that the tubes (3-in-1s) or rails and horns (4-in-1s) structurally "integrate" or provide stability with the booster, which is also why they do not literally infringe. Appx0144 at claim 1; Appx0143 at 7:25–28, 7:44–58.

*Compare* Appx6100–6101 at 1010:12–1011:8 (Dr. Cameron testifying that structural integrity *in the patent* relates, in part, to the connection between the arms and receptacles) *with* Appx6101–6102 at 1011:23–1012:11 (Dr. Cameron testifying that structural integrity *from the accused rails* comes from screwing them into the shell, not from the joining of the booster to the shell).

Thus, even if Dr. Cameron's perfunctory testimony and characterization of the function, way, and result test was correct (it was not), there was no evidence—let alone substantial evidence—to support the jury's DOE-only verdict on this limitation. The court erred in denying JMOL of no infringement. *See Bell Atlantic Network Servs., Inc. v. Covad Comm'cns Group, Inc.*, 262 F.3d 1258, 1280 (Fed. Cir. 2001) (affirming ruling of noninfringement where alleged equivalent of fixed bandwidths would read out requirement of changed bandwidths, effectively vitiating claim element); *Augustine Med.*, 181 F.3d at 1304 (affirming ruling of no infringement because accused blanket lacked the claimed "flattened lower portion" or any structure that could be considered an equivalent thereof).

### B. The seat back of the accused 4-in-1 products does not include the claimed "locking mechanism," and a reasonable jury could not have found otherwise.

Claim 1 further requires a "seat back having a locking mechanism for selectively detachably connecting said seat back to said seat assembly." Appx0144 at 10:52–53. Consistent with the claim, the '043 patent always describes and depicts

the "locking mechanism for selectively detachably connecting" as located on the seat back. Appx0143 at 7:25–28, 7:55–57; Appx0129–0130 at figs. 5, 6, 6A. Specifically, the patent states "the seat back 40 is detachable from the seat assembly 30 through a seat back locking mechanism 50 to permit the seat assembly 30 to be used as a booster seat." Appx0143 at 7:25–28.

At summary judgment and trial, Wonderland pointed to the metal rod—denominated as a "lock rod"—of the seat shell on Evenflo's 4-in-1 seats to allegedly meet this limitation. *See, e.g.*, Appx3871 (declining to engage in claim construction); Appx7459; Appx6086 at 996:1–6. But a stationary metal bar is not a "locking mechanism," let alone a locking mechanism for "selectively detachably connecting." The lock rod does not move, and does not provide the ability to selectively separate the booster from the seat back. Appx5819–5820 at 729:24–730:7. The lock rod has an opposite function—it anchors and prevents detachment of the locking mechanism situated on the booster (alleged "seat assembly"). *Id.* The booster has all the components of selective detachability: the handle, hooks, and spring that move in unison to remove the booster from the seat shell. *Id.*

Realizing that the seat back of the 4-in-1 lacks the claimed "locking mechanism," Wonderland's expert rewrote the claim to require only "*a car seat* with a *lock*," in contrast to the claim language requiring "*a seat back* having a *locking mechanism*." Dr. Cameron testified that the claimed "locking mechanism"

necessarily requires parts on both the seat assembly and the seat back and that the accused 4-in-1 products have such parts on the "seat back" component (lock rod) and the "seat assembly" component (handle, hooks, springs, and pivot rod). Appx6085–6086 at 995:3–996:6; Appx6086–6087 at 996:20–997: 21. She also testified that, without all of them, there is no "locking mechanism." Appx6249–6250 at 1159:24–1160:9 ("The locking mechanism has both parts. … You can't have one part."). For DOE infringement, Dr. Cameron added that the *location* of each of these various parts does not "matter." Appx6090 at 1000:10–17. She insinuated only that the location was insubstantial but did not explain why. She also did not provide any function, way, result analysis for the jury. Appx6089–6090 at 999:1–1000:17 ("[Y]ou can still infringe even if you don't have [the limitation] exactly. As long as it's [] basically something substantially similar or interchangeable."); *see also* Appx6092 at 1002:11–22 (not explaining why the positioning was insubstantially different from claim).

The infringement judgment for this patent and the 4-in-1 seats should be reversed for multiple additional reasons beyond those mentioned above.

First, with respect to literal infringement, the claim requires "a seat back having a locking mechanism for selectively detachably connecting." The only accused feature on the seat back is an immovable lock rod. Appx7459. There was no evidence the lock rod functions for selective detachment, and Dr. Cameron did

not testify that the lock rod is used for this purpose. Appx6092 at 1002:11–22. Indeed, Dr. Cameron admitted that the lock rod alone is not a "locking mechanism." Appx6249–6250 at 1159:24–1160:9. That testimony alone precluded finding literal infringement, and the jury presumably agreed.

Second, with respect to infringement under the doctrine of equivalents, Dr. Cameron did not offer a function, way, or result analysis to substantiate that (1) a "locking mechanism" allegedly located on both a seat assembly and seat back is equivalent to "a seat back having a locking mechanism," (2) a seat assembly having a locking mechanism is equivalent to a "seat back having a locking mechanism," or (3) a seat back having a lock rod is equivalent to a "seat back having a locking mechanism." Appx6089–6090 at 999:1–1000:17. She likewise failed to provide any particularized testimony and linking argument to explain how a lock rod has known interchangeability with the claimed "locking mechanism." *Id.* Rather, she simply testified that "it really doesn't matter whether you have the spring hook on the seat back and the rod, for example, on the assembly or vice versa." Appx6090 at 1000:10–17. But the language of the claim does "matter," and an expert's unexplained say-so does not meet Wonderland's burden to prove its claim. *See Texas Instruments, Inc. v. Cypress Semiconductor, Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (determining that expert DOE testimony "was insufficient" where, as here, the expert gave "no discussion of whether or how the way the [accused product]

operates [was] similar to the patent claim, nor [was] there any particularized testimony explaining *why* the function and result [were] the same").

If anything, Dr. Cameron's DOE opinion vitiated the "seat back having a locking mechanism" limitation by suggesting to the jury that the claim covered its antithesis—a seat back *not* having a locking mechanism simply because another component in the seat did. *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) ("before" not equivalent to "after"); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("mounted" not equivalent to "unmounted"); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358–62 (Fed. Cir. 2005), *cert denied*, 546 U.S. 1150 (2006) (a support member with an end "rotatably mounted" was not equivalent to and vitiated the "slidably mounted" limitation); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1321–22 (Fed. Cir. 2002) (affirming ruling of no DOE infringement because "between" would vitiate requirement of "above" in the claim).

## V. THE INFRINGEMENT VERDICT FOR CLAIMS 1 AND 5 OF THE '951 PATENT SHOULD BE REVERSED BECAUSE OF AN ERRONEOUS CONSTRUCTION OF "CONNECTED TO" AND UNSUPPORTED TESTIMONY THAT A "BACKREST" IS A "HEADREST"

The jury's finding of infringement for the '951 patent was also based on errors of law and facially-deficient evidence. First, the district court erroneously construed the "connected to" term—during trial—to include "different parts or features that are discrete yet formed out of a continuous base material." Appx3878; Appx0088;

*see also* Appx4313; Appx4494–4542; Appx4804, Appx4957. That construction, and corresponding instruction to the jury, perverted the presumptive meaning of one thing being "connected to" another. Second, the district court erred in denying Evenflo's JMOL of non-infringement because the evidence showed that the accused products only have a movable *headrest*, which is not a "*backrest* capable of moving," as claimed.

### A. The district court erroneously construed the term "connected to."

The district court erred as a matter of law in construing "connected to," during trial, in a way that contradicts common parlance and common sense. *See Becton*, 616 F.3d at 1254–56 (reversing district court finding that single structure infringed where, as here, separately-recited components "connected to" one another invokes a presumption of physical separateness). Specifically, the court instructed the jury that the "plain and ordinary" meaning of "connected to" can refer "not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material." Appx0088. This was error. *See, e.g.*, *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1378 (Fed. Cir. 2021) ("coupled to" required components "connected to," "separate from," and "not a sub-component of"); *Regents of Univ. of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 935–39 (Fed. Cir. 2013) (affirming construction of claim reciting "affixed," "connected," and/or "joined" disks as requiring physically distinct components); *see*

*also Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) (where claim listed elements separately, invoking the "presumption that those components are distinct").

The '951 patent describes the "pulling member" and "connecting member" as separate and distinct components of the "driving device." For this reason, the original applicant (not Wonderland) amended the claims during prosecution to specify that the claimed "driving device" was comprised of separate components to distinguish the prior art—a "connecting member" and a "pulling member connected to the connecting member." Appx1002–1003; Appx1005–1008.[7] Ignoring the intrinsic evidence in favor of lay understandings of rivers and statues, the district court erred in construing the claim reciting separately "connected" elements as encompassing unitary structures. Appx4494–4495; Appx3880; Appx0088. Properly instructed, a reasonable jury could not have found in Wonderland's favor because the alleged component was only a single plastic part that did not connect to itself. *See* Appx5828–5829 at 738:20–739:3 (4-in-1); Appx5911–5912 at 821:5–822:8; Appx7893.

[7] Notably, the district court granted Wonderland's motion for summary judgment of no invalidity over this same prior art reference because, ironically, it failed to disclose that the "connecting member" was "pivotally connected to a first end of the engaging member." Appx3888–3891.

### 1. *A "pulling member connected to the connecting member" requires two separate parts.*

Claim terms must be given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). That meaning must be determined by reference to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). The intrinsic evidence here does not support the construction plucked from thin air by the district court, which instructed the jury that a "pulling member connected to the connecting member" can be a single component formed from one "continuous base material." Appx0088.

First, the words of the claims require that the "driving device" be composed of (1) "a connecting member" and (2) "a pulling member connected to the connecting member." The clear implication is that the driving device is composed of two distinct and separate components. *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004) ("the clear implication of the claim language" listing separate claim elements is that those components are "distinct"); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996) (where a claim identifies two components, those two elements "logically cannot be one and the same"). Where, as

here, the claim specifies that two components are "connected to" each another, there is a presumption that two distinct and separate structures are required for a finding of infringement. *See Becton*, 616 F.3d at 1254–56. The district court erred in holding otherwise, and instructing the jury that—as a matter of law—separately claimed components "connected to" each other need not be separate and distinct.

To overcome the presumption, this Court requires more than mere silence in the specification. *See Kyocera*, 22 F.4th at 1382. Here, the '951 patent specification does not overcome the presumption. Instead, it unequivocally describes the "pulling member" and "connecting member" as distinct components of the claimed driving device. Appx0158 at 3:18–20 (the "driving device . . . comprises a pulling member 36 and a connecting member 38"). That affirmative statement, along with the text of the claim itself and the prosecution history, end the inquiry. A single component cannot satisfy the claimed "driving device . . . comprising . . . a connecting member . . . [and] pulling member." Appx0158 at 3:22–23, 4:46–49 ("The connecting member 38 is connected to the pulling member 36"); *see also*, *e.g.*, Appx0150 at fig. 2 (engaging board is separate from seat body, engaging member separate from backrest, and connecting member separate from engaging member); Appx0159 at 6:4–26 (engaging board is separate from backrest). Put simply, every disclosure in the specification aligns with the plain meaning provided in the claims—that "connected to" requires multiple structures.

Ignoring this presumption, the district court erred in its construction of "connected to." The only intrinsic evidence identified by the district court was a single, two-line statement in the patent stating that the backrest includes a "headrest portion 15 [that] is connected to the body portion 17 closely and formed integrally and movable synchronously with the body portion 17." Appx3879. First, that two-line statement discusses the backrest, not the claimed "connecting member" and "pulling member." Second, the headrest portion is "connected to" the body portion "closely," which indicates that they are separate elements. Appx0157 at 2:44-46. Third, "integrally formed" is never itself defined as a single part. Fourth, the specification and the claims use the terms "connected to" and "integrally formed" separately, suggesting those terms are not interchangeable as the court erroneously held. *Compare* Appx0159–0160 (claim 1) *with* Appx1060 (claim 6).[8]

Second, the prosecution history demands that the "pulling member" and "connecting member" limitations be construed to require separate and distinct components. *See Phillips*, 415 F.3d at 1317. In particular, the claims were narrowed explicitly in view of prior art to require a "driving device" comprised of at least two distinct components—a "connecting member" and a "pulling member"—that are

[8] The district court's reliance on extrinsic evidence, including Black's Law Dictionary and the court's understanding of what distinguishes the Delaware River from the Delaware Bay—evidence and arguments Wonderland did not even offer—was unnecessary and improper in view of this Court's presumption and the intrinsic record. *See Phillips*, 415 F.3d at 1317.

"connected to" each other. *See* Appx1002–1003; Appx1005–1008. The district court therefore erred in finding otherwise. *See Bd. of Regents of the Univ. of Texas Sys. v. BENQ America Corp.*, 533 F.3d 1362, 1369–70 (Fed. Cir. 2008) (amendment during prosecution impacted proper construction of disputed term).

In sum, the asserted claims, specification, and prosecution history do not support reading the "pulling" and "connecting" members as "different parts or features that are discrete yet formed out of a continuous base material." The Court should construe the term to require "separate pieces that are later connected, and not a single piece that is formed out of a continuous base material."

*2. Under the Correct Claim Construction, a Reasonable Jury Could Not Have Found that the Accused Products Have a "Pulling Member Connected to a Connecting Member."*

This Court should reverse the infringement judgment. Under the correct construction of "connected to," there was no substantial evidence that Evenflo literally infringes, and Wonderland offered no DOE opinion for this limitation. The alleged "pulling member connected to the connecting member" was a release button (3-in-1) or handle (4-in-1), both of which are made of a single piece of injection-molded plastic. Appx5828–5829 at 738:20–739:3; Appx5911–5912 at 821:5–822:8; Appx7893. Because the button and handle are each a single component, they cannot infringe.

Wonderland also did not argue or present evidence to support infringement under DOE for this limitation, and this limitation is not entitled to any scope of equivalents in light of the prosecution history. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733–34 (2002) (affirming ruling that prosecution history estoppel can arise for narrowing amendments and there is a presumption that a narrowing amendment surrenders all subject matter that falls between the original and amended claim scope). Thus, there is no evidence to support a finding of infringement for the ’951 patent claims for all accused products.

### B. The District Court Erred in Denying JMOL of Noninfringement for the ’951 Patent Because the Accused Products Have a Movable Headrest, Not a "Backrest Movably Disposed on the Engaging Board."

A headrest is not a backrest. And no amount of expert spin can change this very basic point. Thus, the district court erred in denying Evenflo's JMOL of non-infringement for the ’951 patent because a reasonable jury could not have found that the accused products have a "*backrest* capable of moving" simply because they have a *headrest* that moves. Otherwise, every modern car on the road would be deemed to have a moveable backrest.

The claims of the ’951 patent require a "backrest movably disposed on the engaging board," i.e., a "backrest capable of moving." Appx0159–0160 at claim 1. As shown in Figure 1 and described in the patent, the "backrest 14 comprises a headrest portion 15 and a body portion 17" and "the headrest portion 15 is used for

supporting the head of a child and the body portion 17 is used for supporting the body of a child individually." Appx0157 at 2:45–51; Appx0149 at fig. 1. There can be utility in an adjustable backrest, of course, as it allows the high-back booster seat to adjust as the toddler grows. But that utility has no bearing on Evenflo's products. *See, e.g.*, Appx7640; Appx7636; Appx5931 at 841:6–17.

Instead, the record evidence confirms that Evenflo's car seats lack a "backrest capable of moving" because Evenflo's car seats do not include a moveable *backrest*—they include a movable *headrest*. Appx7457–7458; Appx7459–7460; Appx7634–7635; Appx7636–7638; Appx5927–5928 at 837:6–838:6; Appx5825 at 735:2–4; Appx6465–6470 at 1375:5–1380:20; Appx6464–6465 at 1394:14–1395:24. Indeed, the trial evidence showed that Evenflo's 3-in-1 headrests never support the child's back. Appx7490–7524; Appx7634–7635; Appx7636–7638; Appx7639–7640; Appx5932 at 842:16–24; Appx5934 at 844:20–845:1; Appx5846–5847 at 756:18–757:24. Something that does not support the back individually is not a backrest. And this point was so apparent that even Wonderland's expert, Dr. Cameron, acknowledged that these products only have a "headrest portion" (no "body portion" to support the back). Appx6205–6206 at 1115:13–1116:5.

In the 4-in-1 products, the evidence showed that a small flap of plastic on the lower portion of the headrest would sit at the child's shoulders with proper installation. Appx5847 at 757:14–21. There is no evidence the flap would support a

child's back "individually," as one of skill in the art reading the patent would interpret the disclosure. Appx0157 at 2:42–51. The backrest of all accused seats is "fixed to the shell" and cannot move up or down. Appx5825 at 735:2–4; Appx5927–5928 at 837:6–838:6. And Wonderland never rebutted this evidence during trial. Appx7490–7524; Appx5824 at 734:18–22; Appx5825–5826 at 735:6–736:22, Appx5927–5929 at 837:25–839:5. For example, Dr. Cameron never testified that one of skill in the art would consider a headrest alone to be a backrest—in general or in view of the descriptions in the '951 patent. *See* Appx6588 at 1498:19–22 (Dr. Cameron agreeing that the '951 patent does not describe a headrest alone as a "backrest"); *see also, e.g.*, Appx6172–6175 at 1082:18–1085:15.

Accordingly, there is no evidence—let alone substantial evidence—in the record to equate headrest with a backrest. The Court should reverse the district court's denial of JMOL on this issue.

## VI. PERMANENT INJUNCTION

Because the judgment of noninfringement should be reversed, the district court's permanent injunction order should be vacated. In addition, the district court abused its discretion entering an injunction (which it did prior to entering final judgment). The "decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other

cases governed by such standards." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391–94 (2006). Injunctive relief is only available when the court finds: (1) that the patentee has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id*. at 391. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Genband US LLC v. Metaswitch Net. Corp.*, 861 F.3d 1378, 1381 (Fed. Cir. 2017). The district court here did both.

### A. The district court erred in granting injunctive relief that Wonderland did not seek, which this Court quickly and properly stayed pending appeal.

Wonderland did not seek an injunction with respect to the '951 patent. Nor could it. Appx5687 (Wonderland corporate representative admitting that Wonderland does not make any car seat that uses the '951 patent); Appx5661 (same witness testifying that Wonderland has never licensed the '951 patent, or any other patent, to third-parties); *see also* Appx7138 (Wonderland counsel stating to district court that it was "not seeking injunction with respect to Evenflo's infringement of the '951 patent"). There is no clearer abuse of discretion than granting draconian

relief not sought by litigants, and this Court was correct when it agreed to stay enforcement of the same pending appeal. Order at D.I. 21 on 8/16/2023.

### B. The district court abused its discretion in finding irreparable injury to Wonderland based on speculative harms to Graco.

To prove irreparable injury, a patentee must show "that absent an injunction, it will suffer irreparable harm, and . . . that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co*., 695 F.3d 1370, 1374 (Fed. Cir. 2012). To prove irreparable harm, it is not enough for the patentee to establish harm to a third party; the patentee must prove that it or an exclusive licensee has individually suffered harm and the harm cannot be remedied with money alone. *See ActiveVideo*, 694 F.3d at 1337–41; *Voda v. Cordis Corp*., 536 F.3d 1311, 1329 (Fed. Cir. 2008) (affirming denial of a permanent injunction where the patentee "had attempted to prove irreparable injury by alleging irreparable harm to his exclusive licensee, rather than himself").

The district court abused its discretion by ignoring this Court's precedent and awarding an injunction based on non-existent, vicarious harms to Wonderland due to Graco's competition with Evenflo in the car seat market as a whole. The court concluded, based on no evidence whatsoever, that "the similarity between Graco's products and Evenflo's Accused Products has caused Graco's products to lose some of the 'distinctiveness and market allure' and has also harmed Graco's reputation as an innovator in the marketplace." Appx0010. The district court then held, again,

with no evidence, that "[w]hile such reputational and product-specific factors are likely to impact Graco more directly, they still cause Wonderland irreparable harm because of Graco and Wonderland's close working relationship and exclusive supplier arrangement." *Id.*

Nothing in the record addressed Graco's reputation, or how impacts to Graco's reputation affect Wonderland's reputation with its one true customer, Graco. Nor did Wonderland make this argument in its briefing. *See* Appx4961–4987 (all references to reputational harm are about impacts to "its longtime go-to-market partner, Graco"); Appx4966. To the contrary, Wonderland's managing director and executive vice president, Renee Wang, testified that "*i[f]* Evenflo's car seat with a similar function has a problem . . . then [the] consumer *might* think that's a technology problem." Appx4974 (emphasis added). The standard for injunctive relief requires more than "mays," "ifs," and "mights," particularly from a witness who disavowed expertise on marketing-type topics. Appx5699–5700 at 609:24–610:4.

In addition, nothing in the record established that Wonderland lost sales or share of non-car seat products. Appx0008; *see Nichia Corporation v. Everlight Americas, Inc.*, 855 F.3d 1328, 1341–44 (Fed. Cir. 2017) (affirming denial of permanent injunction based in part on patentee's failure to show it lost a substantial number of sales in the marketplace or lost market share). Ms. Wang testified, without

supporting evidence such as financial or consumer data, that Wonderland has lost sales on non-car seat products. Appx5674 at 584:14–17. But asked the foundation for her opinion, Ms. Wang testified "*no more than* the parents will buy other products under the same brand name. So *maybe* they make the difficult decision to buy the car seat first." Appx5674 at 584:18–25 (emphasis added). She also stated "because once the parent determine to buy the car seat, they *may* also choose stroller, highchair, play yard under the same brand." Appx5675 at 585:4–12. "No more than" Ms. Wang's assumptions again is not enough for equitable relief.

Similarly, nothing in the record established that Graco lost sales or share of car seat products. Wonderland put forth no evidence that Graco lost share *to Evenflo* or *to the accused products* or *because of the accused features*, let alone lost sales *at all*. Wonderland's sole piece of evidence regarding Graco's lost share was a single trial exhibit that purports to show a dip in share in *one* quarter of 2020 *due to the COVID-19 pandemic*, even though the accused features had been on the market for nearly 10 years. *See* Appx7910–7924; Appx5950 at 860:5–10; *Genband*, 861 F.3d at 1385 (patentee's delay in bringing suit and decision not to seek preliminary injunctive were factors that the district court could consider in assessing whether to grant a permanent injunction). Furthermore, this same document shows an actual year-over-year *increase* in Graco's share in the All-in-One and convertible car seat

categories from January 2019 (46.6%) to January 2020 (49.7%). Appx7913; *see Nichia*, 855 F.3d at 1341–44.

There also was no evidence that Wonderland lost any car seat sales based on Evenflo's accused products. Ms. Wang testified, in conclusory fashion, that they lost share, but she never identified (1) *when* share or sales were lost, (2) *how* much share or many sales were lost, (3) which "market" she analyzed, or (4) which Graco products allegedly lost share. Appx5673–5674 at 583:24–584:5. There is a significant difference between the loss of one car seat sale versus hundreds of thousands of lost sales, and in the instant case, there was no enumeration of either. Without more, including evidence of nexus, which simply did not exist, the district court could not evaluate whether or which accused features impacted on any alleged losses. Thus, the district court abused its discretion. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639 (Fed. Cir. 2015) ("To satisfy the first *eBay* factor, the patentee must show that it is irreparably harmed by the infringement. This requires proof that a causal nexus relates the alleged harm to the alleged infringement.") (internal quotations omitted).

The court likewise failed to consider other factors weighing against irreparable harm. For example, Wonderland submitted no competent testimony that it practices its patents. In addition, Graco and Evenflo are far from the only competitors in the car seat market. The market encompasses a large number of

companies, including, for example, Safety 1st, Baby Trend, Britax, Dorel (under the Maxi-Cosi brand), Chicco, Nuna (a Wonderland brand), and IMMI, all selling seats at different price points. *See* Appx5705 at 615:12–18; Appx5662–5663 at 572:25–573:7; Appx6018–6019 at 928:23–929:4; *see also* Appx7910–7924. Thus, sales to Evenflo are not necessarily the loss of a sale to Graco and certainly not to Wonderland whose selling practices to Graco, *e.g.*, in bulk, on a per-order basis, etc., were never established at trial. Wonderland adduced no evidence at trial that it sells less product to Graco as a result of Evenflo's sale of the accused products. To the contrary, the evidence showed that Graco remained a market leader notwithstanding an overall shrinking market. Appx5996–5997 at 906:23–907:3, Appx6046 at 956:19–24.

### C. Monetary damages were adequate.

Given the absence of lost sales or market share due to Evenflo's accused products, Wonderland did not sustain its burden to show that money damages in the form of a reasonable royalty were not an adequate remedy for any future alleged infringement of the asserted patents. *See ActiveVideo*, 694 F.3d at 1337–41. In point of fact, Wonderland requested—and the district court allowed—this issue to go to the jury. The jury's verdict found the royalty rate for past damages adequate to compensate Wonderland on a "running royalty" rate going forward. Appx0112. The district court erred in reversing the very finding Wonderland asked the jury to make.

## VII. INCORRENT AMENDED JUDGMENT

The district court entered improper judgment of infringement for non-asserted claims of the ’951 patent with respect to the 3-in-1 products. Specifically, the district court entered judgment that Evenflo’s 3-in-1 car seats infringe claim 5 of the ’951 patent, but Wonderland dropped that claim against the 3-in-1 seats during trial, and the jury did not reach a verdict on it. Appx0107–0112.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Evenflo respectfully requests that the Court reverse (or alternatively vacate and remand) the judgment of infringement for the 4-in-1 and 3-in-1 products, and vacate the remedies awarded to Wonderland, including the district court's entry of a permanent injunction.

Dated: November 1, 2023

Respectfully submitted,

By: */s/ Lauren E. Douville*

Lauren E. Douville (ldouville@shb.com)
Aaron E. Hankel (ahankel@shb.com)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550

Sharon A. Israel (sisrael@shb.com)
Shook, Hardy & Bacon L.L.P.
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008

***Counsel for Defendant-Appellant Evenflo Company, Inc.***

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and Federal Circuit Rule 32(b). This brief contains 13,941 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: November 1, 2023

Respectfully submitted,

By: *Lauren E. Douville*

Lauren E. Douville
(ldouville@shb.com)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550

***Counsel for Defendant-Appellant Evenflo Company, Inc.***