**2023-2043, -2233, -2326**

# United States Court of Appeals for the Federal Circuit

WONDERLAND SWITZERLAND AG,

*Plaintiff-Cross-Appellant,*

– v. –

EVENFLO COMPANY, INC.,

*Defendant-Appellant.*

*Appeal from the United States District Court for the District of Delaware Case No. 1:20-cv-00727-JPM, Judge Jon P. McCalla, Sitting by Designation*

## NON-CONFIDENTIAL BRIEF FOR PLAINTIFF-CROSS-APPELLANT

BIJAL V. VAKIL
ALLEN & OVERY LLP
550 High Street, 2nd Floor
Palo Alto, California 94301
(650) 388-1650

SHAMITA D. ETIENNE-CUMMINGS
DAVID M. TENNANT
JAMES P. GAGEN
ALAN M. BILLHARZ
MEGAN M. INES
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, DC 20005
(202) 683-3800

*Attorneys for Plaintiff-Cross-Appellant*

JANUARY 24, 2024

COUNSEL PRESS (800) 4-APPEAL • (326334)

## U.S. PATENT NO. 7,625,043 – CLAIM 1

1. A car seat for use in an automobile to transport a child, comprising:

A seat assembly defining a generally horizontal seat surface for supporting a child positioned thereon, said seat assembly including a pair of receptables; and

A seat back having a locking mechanism for selectively detachably connecting said seat back to said seat assembly, said seat back including a rear support portion oriented in generally upright position when attached to said seat assembly, said seat back having a pair of attachment arms projecting generally, perpendicularly outwardly relative to said rear support portion for engagement with said seat assembly so as to be received within corresponding said receptacles.

## U.S. PATENT NO. 8,141,951 – CLAIM 1

1. A child safety seat comprising: a seat body;

An engaging board connected to the seat body, a tooth-shaped structure being formed on the engaging board;

A backrest movably disposed on the engaging board; and

An engaging mechanism disposed between the engaging board and the backrest, the engaging mechanism comprising:

An engaging member pivotally connected to the backrest for engaging with the tooth-shaped structure; and

A driving device movably connected to the backrest, the driving device comprising:

A connecting member pivotally connected to a first end of the engaging member; and

A pulling member connected to the connecting member, for driving the first end of the engaging member to rotate relative to the backrest when the driving device moves to a releasing position, so as to disengage a second end of the engaging member from the tooth-shaped structure, and further for driving the first end of the engaging member to rotate relative to the backrest when the driving device moves to a locking position, so as to engage the second end of the engaging member with a positioning groove of the tooth-shaped structure, such that a height of the backrest relative to the engaging board is fixed;

Wherein the backrest is capable of moving relative to the engaging board when the second end of the engaging member is disengaged from the tooth-shaped structure.

4. The child safety seat of claim 1, wherein the driving device further comprises a spring connected between the engaging member and a protruding portion of the backrest.

5. The child safety seat of claim 1, wherein the pulling member is a handle.

6. The child safety seat of claim 1, wherein the backrest the backrest comprises a headrest portion and a body portion, the headrest and body portion are formed integrally and movable synchronously disposed on the engaging board.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2043, 2023-2233, 2023-2326

**Short Case Caption** Wonderland Switzerland AG v. Evenflo Company, Inc.

**Filing Party/Entity** Wonderland Switzerland AG

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/24/2024

Signature: /s/Shamita Etienne-Cummings

Name: Shamita Etienne-Cummings

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Wonderland Switzerland AG | | Parent company: Wonderland International AG |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| Eric E. Lancaster<br>Allen & Overy LLP | Noah A. Brumfield<br>Allen & Overy LLP | Karen Elizabeth Keller<br>Shaw Keller LLP |
| Katherine Kieckhafer<br>Allen & Overy LLP | Jacob Rothenberg<br>Allen & Overy LLP | Emily DiBenedetto<br>Shaw Keller LLP |
| Majesty Jala<br>Allen & Overy LLP | Andrew Colin Mayo<br>Ashby & Geddes | Steven J. Balick<br>Ashby & Geddes |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF INTEREST (Attachment)**

Case Number: 2023-2043, 2023-2233, 2023-2326
Case Caption: Wonderland Switzerland AG v. Evenflo Company, Inc.
Filing Party: Wonderland Switzerland AG

**4. Legal Representatives Continued:**

| | |
|---|---|
| Mareesa A. Frederick<br>Finnegan, Henderson, Farabow, Garrett & Dunner | E. Robert Yoches<br>Finnegan, Henderson, Farabow, Garrett & Dunner |
| Elizabeth D. Ferrill<br>Finnegan, Henderson, Farabow, Garrett & Dunner | Gary C. Ma<br>Finnegan, Henderson, Farabow, Garrett & Dunner |
| Brooke M. Wilner<br>Finnegan, Henderson, Farabow, Garrett & Dunner | Alissa E. Green<br>Finnegan, Henderson, Farabow, Garrett & Dunner |
| Kara Allyse Specht<br>Finnegan, Henderson, Farabow, Garrett & Dunner | Michelle Wang<br>Formerly of Allen & Overy LLP |
| James N. Reed<br>Formerly of Allen & Overy LLP | Victoria Moffa<br>Formerly of Allen & Overy LLP |
| Michael J. Songer<br>White & Case LLP | |

# TABLE OF CONTENTS

U.S. PATENT NO. 7,625,043 – CLAIM 1

U.S. PATENT NO. 8,141,951 – CLAIM 1

CERTIFICATE OF INTEREST .......... i

STATEMENT OF RELATED CASES .......... xv

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

INTRODUCTION .......... 3

STATEMENT OF THE CASE .......... 4

A. Factual Background .......... 4

1. Wonderland, Evenflo, and the Infringing Products .......... 4

2. The ’043 Patent .......... 6

3. The ’951 Patent .......... 6

B. District Court Proceedings .......... 7

1. *Markman* .......... 8

2. Summary Judgment .......... 9

3. Pre-Trial .......... 10

4. Trial .......... 11

5. Post-Trial proceedings .......... 13

C. Appellate Proceedings .......... 14

SUMMARY OF THE ARGUMENT .......... 14

ARGUMENT .......... 16

I. EVENFLO’S APPEAL .......... 16

A. Standard of Review .......... 16

B. All Accused Products Infringe the ’043 Patent .......... 17

1. All Accused Products have “a pair of receptacles” .......... 18

a. Evenflo stipulated to the district court’s construction of “receptacle” .......... 18

b. Substantial evidence supports the jury’s verdict that the Accused Products have a “pair of receptacles” .......... 23

2. All Accused Products have “Attachment Arms … for Engagement” .......... 27

a. The district court properly found that “engagement” should have its plain and ordinary meaning .......... 27

b. The jury heard Evenflo’s arguments as to “engagement” and still found infringement .......... 30

c. Substantial evidence supports the jury's verdict ..........32
i. The Accused Products literally have "attachment arms … for engagement"........................................33
ii. The Accused Products have "attachment arms … for engagement" under DOE ..................................36
3. The 4-in-1 Products Have a "Locking Mechanism".................41
a. Evenflo cannot vary the plain meaning of "a seatback *having* a locking mechanism"........................................42
b. Substantial evidence supports the jury verdict that the 4-in-1 products have a "locking mechanism" ................43
C. The Accused Products Infringe the '951 Patent.................................47
1. All Accused Products have a "pulling member connected to a connecting member" ........................................48
a. The District Court properly construed "connected to"...49
b. Substantial evidence supports the jury's verdict ............53
2. The Accused Products have a "backrest movably disposed on the engaging board" .............................................55
D. The Injunction Should Be Affirmed ....................................................58
1. Evenflo Fails to Identify Any Reversible Legal Error ...........................................................................59
2. The District Court Properly Found that Evenflo Causes Irreparable Harm to Wonderland.................................61
3. The District Court Properly Found that Remedies at Law are Inadequate .............................................................65
II. WONDERLAND'S CROSS-APPEAL........................................................66
A. Standard of Review ..............................................................................66
B. A New Trial on Willful Infringement is Warranted ...........................66
1. The Dracula Email is highly probative of Evenflo's subjective intent.......................................................67
2. The Dracula Email is substantially more probative than prejudicial...........................................................................69
a. The district court erred in evaluating the email's probative value.............................................................69
b. The district court abused its discretion in excluding the Dracula Email ..........................................................70
3. The exclusion of the Dracula Email affected Wonderland's substantial rights................................................72
CONCLUSION ..........................................................................................75

CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 11, 66, 68, 70, and 73 has been designated by Evenflo as confidential under the Stipulated Protective Order dated August 8, 2020, and contains the confidential competitive and business information of Evenflo. The material omitted describes the specific contents of the excluded evidence that is the subject of Wonderland's cross-appeal.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. 2K Sports, Inc.*,
15 F.4th 1069 (Fed. Cir. 2021) ....................60

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
808 F.3d 1313 (Fed. Cir. 2015) ....................37

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
805 F.3d 1368 (Fed. Cir. 2015) ....................19

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) ....................64

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
839 F.3d 1034 (Fed. Cir. 2016) ....................26, 27, 35

*AquaTex Indus., Inc. v. Techniche Sols.*,
479 F.3d 1320 (Fed. Cir. 2007) ....................36, 40

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ....................67, 69, 70

*Atlanta Motoring Accessories, Inc. v. Saratoga Techs., Inc.*,
33 F.3d 1362 (Fed. Cir. 1994) ....................39

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016) ....................42

*Aylus Networks, Inc. v. Apple, Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) ....................52

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................*passim*

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................10, 48, 50, 51

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013) ....................17, 42

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998) ....................................................................41

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ..............................................................52, 56

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966)...................................................................................40

*Cordis Corp. v. Boston Sci. Corp.*,
658 F.3d 1347 (Fed. Cir. 2011) ................................................25, 34, 40, 55

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989) ....................................................................37

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ....................................................................33

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006) ....................................................................29

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) ....................................................................47

*In re Diet Drugs Prods. Liab. Litig.*,
369 F.3d 293 (3d Cir. 2004) ..................................................................72, 73

*Dupree v. Younger*,
598 U.S. 729 (2023)...................................................................................20

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)...........................................................................*passim*

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996) ......................................................................51

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
149 F.3d 1309 (Fed. Cir. 1998) ....................................................................37

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ....................................................................23

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ....................................................................69

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ............................................................31, 32, 66

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005) ....................................................................47

*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004) ..............................................................50, 51

*Genband US LLC v. Metaswitch Net. Corp.*,
861 F.3d 1378 (Fed. Cir. 2017) ....................................................................61

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) .....................................................................57

*Glass v. Philadelphia Elec. Co.*,
34 F.3d 188 (3d Cir. 1994) .....................................................................66, 73

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ......................................................................19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)..................................................................................67, 75

*Hewlett-Packard Co. v. Mustek Sys., Inc*.,
340 F.3d 1314 (Fed. Cir. 2003) ....................................................................56

*Hoechst Celanese Corp. v. BP Chemicals Ltd.*,
78 F.3d 1575 (Fed. Cir. 1996) ......................................................................70

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ....................................................................28

*Key Pharms. v. Hercon Lab'ys Corp.*,
161 F.3d 709 (Fed. Cir. 1998) ......................................................................30

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004) ....................................................................72

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) ....................19, 21

*Leader Techs., Inc. v. Facebook, Inc.*,
678 F.3d 1300 (Fed. Cir. 2012) ....................16, 17

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
285 F.3d 1353 (Fed. Cir. 2002) ....................33

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ....................71

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ....................18, 19, 30

*Old Chief v. United States*,
519 U.S. 172 (1997)....................73

*Ortho Pharm. Corp. v. Smith*,
959 F.2d 936 (Fed. Cir. 1992) ....................60

*In re Paoli R.R. Yard PCB Litig*.,
916 F.2d 829 (3d Cir. 1990) ....................72

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) ....................37

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................*passim*

*Pitts v. Delaware*,
646 F.3d 151 (3d Cir. 2011) ....................17

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011) ....................51

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012) ....................59, 74

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ....................................................................52

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011) ..................................................................51

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ..................................................................60

*Robinson v. First State Cmty. Action Agency*,
920 F.3d 182 (3d Cir. 2019) .......................................................................66

*Rsch. Corp. Techs. v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010) ....................................................................49

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ..................................................................21

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
14 F.4th 1323 (Fed. Cir. 2021) ...................................................................67

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ..................................................19, 55, 58

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
347 F.3d 1355 (Fed. Cir. 2003) ..................................................................46

*TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*,
920 F.3d 777 (Fed. Cir. 2019) ....................................................................71

*Toshiba Corp. v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012) ..................................................................29

*TQ Delta, LLC v. ADTRAN, Inc.*,
No. CV 14-954-RGA, 2019 WL 5626638 (D. Del. Oct. 31, 2019) ...................56

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014) ..................................................................59

*United States v. Edwards*,
792 F.3d 355 (3d Cir. 2015) .......................................................................72

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ....................30

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) ....................36, 56

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ....................46

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)....................37, 38

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
992 F.3d 1366 (Fed. Cir. 2021) ....................52

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
564 F. Supp. 3d 320 (D. Del. 2021)....................7

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
Case No. 1:23-cv-00354-JPM (D. Del. Mar. 28, 2023) ....................8

*Zygo Corp. v. Wyko Corp.*,
79 F.3d 1563 (Fed. Cir. 1996) ....................47

**Statutes**

28 U.S.C. §§ 1292(c)(1)-(2)....................1

28 U.S.C. § 1331 ....................1

28 U.S.C. § 1338 ....................1

28 U.S.C. § 2111 ....................58

35 U.S.C. § 284....................75

**Other Authorities**

Fed. R. Evid. 403 ....................66, 69

Fed. R. Evid. 801(c)(2) ....................72

FRCP 50(a)(1)....................17

FRCP 59(a) ....................................................................................................66

FRCP 60(a) ....................................................................................................58

## ABBREVIATIONS

| TERM | DEFINITION |
|---|---|
| ’043 patent | U.S. Patent No. 7,625,043 |
| ’951 patent | U.S. Patent No. 8,141,951 |
| 3-in-1 Products | Evenflo Safemax<br><br>Evenflo Evolve<br><br>Evenflo Transitions |
| 4-in-1 Products | Evenflo EveryFit Convertible Car Seat<br><br>Evenflo EveryKid Convertible Car Seat |
| Accused Products | 4-in-1 and 3-in-1 Products |
| Evenflo | Defendant-Appellant Evenflo Company, Inc. |
| Graco | Graco Children’s Products Inc. |
| Wonderland | Plaintiff Cross-Appellant Wonderland Switzerland AG |

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5(a), counsel for Cross-Appellant Wonderland Switzerland AG ("Wonderland") states that no other appeal in or from the same proceeding before United States District Court for the District of Delaware was previously before this or any other appellate court.

Pursuant to Fed. Cir. R. 47.5(b), the decision in this appeal may affect the following case:

> *Wonderland Switzerland AG v. Evenflo Company, Inc.,* Case No. 1:23-cv-00354-JPM (D. Del.).

# JURISDICTIONAL STATEMENT

This consolidated case involves three appeals. The first (23-2043) is Evenflo's appeal of the district court's permanent injunction. The second (23-2233) and third (23-2326) are Evenflo's appeal and Wonderland's cross-appeal, respectively, from the district court's Amended Judgment, which is final except for an accounting of supplemental damages. Parties timely filed their respective notices of appeal and cross-appeal. The district court had jurisdiction under 28 U.S.C. §§ 1331, 1338. This Court has jurisdiction under 28 U.S.C. §§ 1292(c)(1)-(2).

## STATEMENT OF THE ISSUES

Evenflo's Appeal

1. Whether the district court properly upheld the jury's verdict that Evenflo infringes claim 1 of the '043 patent, where the district court correctly construed the claims and substantial evidence supports infringement.

2. Whether the district court properly upheld the jury's verdict that Evenflo infringes claims 1 and 5 of the '951 patent, where the district court correctly construed the claims and substantial evidence supports infringement.

3. Whether the district court properly exercised its equitable discretion in granting a permanent injunction where the jury found that Evenflo infringes both asserted patents, and the district court found irreparable injury to Wonderland, causal nexus to Evenflo's infringement, and inadequacy of money damages.

Wonderland's Cross-Appeal

4. Whether the district court abused its discretion by denying Wonderland a new trial on willful infringement, where the district court erroneously excluded evidence establishing Evenflo's subjective intent to infringe the '043 patent.

## INTRODUCTION

Wonderland is a leading designer and manufacturer of innovative children's products and the exclusive supplier of the market-leading Graco car seats, including the Nautilus and Graco4Ever. Evenflo is also a producer of children's car seats. This appeal arises from the second of three complaints Wonderland filed to remedy Evenflo's repeated infringement of Wonderland's patented car seat technologies.

In a one-week trial, a Delaware jury heard testimony from fact witnesses, weighed competing expert testimony, evaluated detailed design documents, examined the physical car seats themselves, and found that Evenflo's Accused Products infringe Wonderland's '043 patent and '951 patent. The district court then weighed the evidence, found that Evenflo's infringement caused irreparable competitive harm to Wonderland, and enjoined Evenflo from further infringement. Evenflo's challenge is premised on untimely claim constructions and misdirected efforts to recast the record. Evenflo provides no basis for this Court to disturb the jury's infringement verdict or the district court's permanent injunction.

Only a new trial on willful infringement is warranted. Wonderland cross-appeals the district court's exclusion of direct, contemporaneous evidence of Evenflo's subjective intent to infringe the '043 patent. Remand is necessary for a new trial on willful infringement and assessment of enhanced damages.

## STATEMENT OF THE CASE

### A. Factual Background

#### 1. Wonderland, Evenflo, and the Infringing Products

Wonderland designs, manufactures, and sells innovative products for children. Appx0001-02, Appx0013, Appx0314-15. Wonderland is Graco's exclusive supplier of children's car seats, including the Graco Nautilus and Graco 4Ever. Appx0008-09, Appx4969-71. Wonderland also designs and manufactures other children's products for Graco, including strollers, play yards, and high chairs. Appx4973-74.

Wonderland and Graco have "maintained a close working relationship for more than thirty-five years," working together to create the product category in which Evenflo's infringing products now sit. Appx0009-10, Appx4969-71, Appx0314-15. With the Nautilus, Wonderland and Graco built the convertible car seats market. Appx4971, Appx5589-94, Appx5665-67, Appx5886-87, Appx6000-02.[1] The Nautilus is a "3-in-1" convertible car seat, with a forward-facing harness mode, a high-back booster mode, and a no-back booster mode. Appx4971, Appx5886, Appx5583-89. The Graco4Ever is a "4-in-1" car seat, adding a rear-facing harness mode for infants. Appx4971, Appx5595, Appx5671-72, Appx5989, Appx6000-02, Appx6303-07. Wonderland has invested significant time and

---

[1] Convertible car seats enable parents to use the same seat as their child grows by providing multiple modes of operation. Appx4972; *see* Appx0140-44.

resources to develop its car seats and other products, resulting in hundreds of issued U.S. Patents. Appx5665, Appx5679. To protect Graco and Wonderland's competitive position, Wonderland does not license its patents to competitors. Appx0011.

Prior to the Accused Products, Evenflo had nothing that could compete with the Nautilus or Graco4Ever. *See* Appx5858, Appx5909-10, Appx5989. In 2014, shortly after its acquisition by Goodbaby LLC, and in response to a direct request from retailers for a product that could compete with the Nautilus, Evenflo began work on a 3-in-1 product. Appx7541-43. Evenflo was aware of the '043 patent at the time. Appx0075. Evenflo conceded it was the "Graco Nautilus" patent. Appx5902, Appx5904, Appx5965, Appx5998, Appx6004-06. Evenflo under time constraints, market pressure, and its own failed design, tore down the Nautilus, then introduced a car seat that "integrate[d]" the Nautilus's features. Appx7541-43; *see, e.g.,* Appx5876, Appx5900, Appx5998-99. By Evenflo's own records, it specifically developed the 3-in-1 Accused Products as a "Nautilus replacement" that would match the Nautilus "feature for feature." Appx7546-47; *see id.* (noting "risk based on condensed schedule"). After Evenflo entered the market, Evenflo and Graco's convertible car seats were displayed side-by-side at major retail outlets in direct competition. Appx4971-74.

### 2. The ’043 Patent

The ’043 patent is foundational to convertible car seats and resulted from the design and development of the Graco Nautilus car seat. Appx4971, Appx5562-63, Appx5589-90, Appx5665-67, Appx5886-87, Appx6000-02. It teaches a car seat with a seat back that can be separated from the booster (or “seat assembly”), while maintaining the structural integrity essential to prevent the seat from collapsing in the event of a crash. Appx0141; *see* Appx5636-38. It uses an L-shaped design to combine a seat back with “attachment arms … for engagement” with “a pair of receptacles” on the seat assembly and a “locking mechanism for selectively detachably connecting” the seat back and assembly. Appx0144.



Fig. 5



Fig. 9

Appx0129, Appx0133.

### 3. The ’951 Patent

The ’951 patent teaches a mechanism that allows the vertical adjustment of a

car seat backrest to be fixed at a desired height to support a growing child. Appx0148. It uses an "engaging member" pivotally connected to a "driving device." Appx0159-60. The driving device includes a "pulling member connected to [a] connecting member" to rotate the engaging member relative to the backrest. Appx0159.




FIG. 2




FIG. 4

Appx0150, Appx0152.

**B. District Court Proceedings**

Wonderland has pursued three infringement actions against Evenflo. This appeal arises from the second. In the first, following a bench trial in 2021, the district court held that Evenflo's car seats infringed two Wonderland patents. *Wonderland Switzerland AG v. Evenflo Co., Inc.*, 564 F. Supp. 3d 320, 327-37 (D. Del. 2021). The third was precipitated by the instant case when, between the close of discovery

and the start of jury trial, Evenflo launched a new convertible car seat, the "All4One," which is essentially the same as the 4-in-1 Products at issue here. *See Wonderland Switzerland AG v. Evenflo Co., Inc.*, Case No. 1:23-cv-00354-JPM (D. Del. Mar. 28, 2023); Appx8249-50, Appx8253-54. On June 23, 2023, after initially denying it, Evenflo stipulated that its All4One products are "only colorably different" from the 4-in-1 Products for infringement of claim 1 of the '043 patent and subject to the injunction in this case. Appx8249-50. The case is stayed pending the outcome of this appeal. Appx8253-54.

### 1. *Markman*

For *Markman*, Wonderland proposed constructions for the terms "engagement" and "receptacle" as recited in the '043 patent, and Evenflo responded with counter-proposals. Appx0309-11.

| Term | Initial Wonderland Proposed Construction | Initial Evenflo Proposed Construction |
|---|---|---|
| "engagement" | "interaction of two or more elements" | "to interlock with or fit into and move together with" |
| "receptacle" | "a space defined by one or more surfaces sized to receive attachment arms" | "a bounded space to receive and contain" |

Appx0309-11. For "receptacle," during the *Markman* hearing, Evenflo abandoned its construction, and the Parties stipulated to the district court's construction, as "a three-dimensional space sized to receive attachment arms." Appx0490, Appx0510, Appx1058-61, Appx3862-64. For "engagement," the district court rejected

Evenflo's proposed "interlocking" construction as "too narrow" and adopted the term's "plain and ordinary" meaning. Appx0490, Appx0522, Appx3864-68. Neither party proposed terms for construction for the '951 patent at *Markman*. Appx0309-11.

### 2. Summary Judgment

At summary judgment, Evenflo presented the district court with three non-infringement positions for the '043 patent that Evenflo now calls questions of "claim scope." Br. 17, 19; *see* Appx3858, Appx3861-71. Evenflo argued that the Accused Products lacked "a pair of receptacles" because the receptacles in its products were not "bounded." Appx0678, Appx0683, Appx0691, Appx3864. The district court rejected this argument and held Evenflo estopped from re-raising its "bounded" construction. Appx3864. Evenflo next argued that the Accused Products did not have "a pair of attachment arms … for engagement." Appx0693-97, Appx3864-68. Evenflo asserted that the term "engagement" should now mean "interlocking with or otherwise attaching to." Appx0693-94, Appx3865. The district court again rejected Evenflo's new proposed construction as "overly limiting and inconsistent with its usage in the '043 Patent," and reaffirmed the term taking its "plain and ordinary meaning." Appx3866-68. Last, Evenflo argued that the 4-in-1 Products lacked "a seat back having locking mechanism," because they did not have a locking mechanism "entirely located on" the seat back. Appx3868-70. Again, the district

court rejected Evenflo's argument as "a significant departure from the claim requirements" and intrinsic record. Appx3870. The district court left the remaining issues of fact for the jury.

For the '951 patent, Evenflo argued that the Accused Products lacked a "pulling member connected to the connecting member," asserting that, under this Court's precedent in *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010), "connected to" created a "presumption that infringement requires two distinct components" and the Accused Product's pulling member and connecting member were "a single piece of molded plastic." Appx0686-87. Evenflo maintained that this was not a claim construction argument. Appx2826. The district ultimately rejected Evenflo's construction of "connected to," concluding that the "intrinsic and extrinsic evidence … shows that 'connected to' should be given its plain and ordinary meaning," which "can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material." Appx3878. For "backrest," Evenflo again did not seek claim construction and raised no developed arguments. *See* Appx0685-89. The district court left the remaining issues of fact for the jury.

**3. Pre-Trial**

Before trial, on Evenflo's motion in limine, the district court excluded a key piece of evidence for Wonderland's willful infringement case, an email and related

testimony showing that Evenflo knew or should have known of its infringement. Appx4007-08. In 2017, a Job Title from Evenflo's parent corporation notified Evenflo that one Accused Product might infringe claim 1 of the '043 patent (the "Dracula Email"). Appx3785-3805. Despite the email's clear relevance to Evenflo's subjective intent to infringe, the district court excluded the email and related testimony as more prejudicial than probative. Appx4008.

On the eve of trial, Evenflo withdrew all its invalidity defenses.

#### 4. Trial

During a week-long jury trial in January 2023, Wonderland presented its infringement case. The jury considered nine fact witnesses and Wonderland expert witnesses, including Dr. Kimberly Cameron for infringement. Evenflo presented its non-infringement expert, Mr. Corey Campbell. Evenflo attempted, through witness testimony and attorney argument, to re-introduce lost claim construction arguments, *see, e.g.*, Appx6491-93, Appx6549 (Mr. Campbell reintroducing "bounded" for "receptacle" as "geometry"), Appx6534-36 (Mr. Campbell reintroducing "interlocking" for "engagement," stating "[s]o my understanding of the term 'engagement' would be that it would need to come together and interlock"), Appx4494-95 (Evenflo seeking to re-introduce preferred construction of "connected to"); to vary the plain meaning of a claim term for which it had never sought construction, Appx6470-81 (district court, on Wonderland's objection, calling

Evenflo to the sidebar for Mr. Campbell testifying "directly contrary to the language of the ['951] patent" to vary the plain meaning of "backrest"); and to present the Accused Products from limited and limiting angles, *see* Appx6263 (Dr. Cameron, noting Evenflo had "hidden the structure on the seat"). Evenflo then withdrew its damages expert.

The jury was instructed, consistent with the district court's claim constructions that:

| **Term** | **Court's Construction** |
|---|---|
| Receptacle | "a three dimensional space sized to receive an attachment arm" |
| Engagement | plain and ordinary meaning |
| Connected to | plain and ordinary meaning, which "can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material |

Appx0087-88. The district court further provided that, where it had not provided an express construction, the term's "plain and ordinary" meaning "as used in the patent" controlled, including for the term "backrest." Appx0087-88.

So instructed, the jury entered its verdict finding that Evenflo infringes claim 1 of the '043 patent and claims 1 and 5 of the '951 patent, does not infringe claims 4 and 6 of the '951 patent, and that Wonderland is entitled to a reasonable royalty at a rate of $4.50 per car seat sold. Appx0107-09, Appx0111. The jury, however, found no willful infringement. Appx0110.

### 5. Post-Trial Proceedings

Following trial, Evenflo moved for judgment as a matter of law ("JMOL") of non-infringement. Appx4788, Appx4792. Wonderland cross-moved for a new trial on willful infringement based on the erroneous exclusion of the Dracula Email. Appx4836, Appx4840. The district court denied both motions.

Wonderland also sought a permanent injunction or, in the alternative, ongoing royalties. Appx4925, Appx4961. On June 7, 2023, following a hearing on equitable relief, the district court enjoined Evenflo from making, using, offering to sell, and selling "the Infringing Products … and any other products only colorably different therefrom," with a two-week sunset period. Appx0019. The district court's order detailed its analysis and conclusion that all four *eBay* factors weighed in favor of a permanent injunction. Appx0001-18. Because the district court granted the injunction, it did not reach Wonderland's alternative motion for an ongoing royalty for each asserted patent. Appx0019; *see also* Appx4961-85.

Evenflo moved the district court to stay the injunction pending appeal. Appx7192-7216. The district court denied Evenflo's stay motion, but extended the sunset period until June 27, 2023. Appx0021-43. The district court's order addressed (and rejected) the purported legal and factual errors that Evenflo argued warranted reversal of its injunction. Appx0021-43.

### C. Appellate Proceedings

Evenflo next moved to stay the district court's injunction in this Court. Dkt. 5. Following a temporary stay pending decision, *see* Dkt. 7, on August 16, 2023, this Court lifted its temporary stay of the injunction for the '043 patent, which became immediately effective. Dkt. 21. The injunction remains stayed for the '951 patent, but because the '043 infringing products include all '951 infringing products, the practical effect is that all Evenflo's infringing products are currently enjoined. *See* Appx0030.

## SUMMARY OF THE ARGUMENT

Evenflo frames its infringement appeal in terms of "claim construction errors" and "failures to construe" disputed terms, but those arguments are primarily forfeit, and this Court does not reweigh facts or second-guess the jury. Evenflo strategically dropped its invalidity defenses before trial, then argued that the district court and the jury should interpret a series of functional claim limitations to have highly specific structural requirements that, Evenflo believes, would exclude the Accused Products. Evenflo's arguments are without merit. This Court should affirm.

***Evenflo infringes the '043 patent.*** Evenflo argues the Accused Products lack: (1) a booster with "a pair of receptacles"; (2) a seat back with a pair of attachment arms "for engagement" with those receptacles; and, for the 4-in-1 Products, (3) "a seat back having a locking mechanism" to secure it to the booster. Evenflo, however,

identifies no error of law or missing fact warranting reversal.

First, Evenflo omits that it stipulated to the district court's construction of "receptacle" and never sought a construction of "pair of …" until after trial. Evenflo seeks to convert a lost factual issue—whether the Accused Products have a "pair of receptacles"—into a legal issue. Evenflo's arguments must be rejected. Second, Evenflo omits that the district court twice considered and twice rejected Evenflo's proposed constructions of "engagement" as too narrow and contrary to the intrinsic record. There is ample record evidence to support a finding of infringement, whether literal or under the doctrine of equivalents. Third, Evenflo omits that it never sought a construction of "locking mechanism" before the district court and cannot seek to vary the term's plain meaning now. Substantial evidence supports the jury's verdict.

***Evenflo infringes the '951 patent.*** Evenflo argues the Accused Products lack (1) "a pulling member connected to the connecting member", and (2) "a backrest movably disposed." Evenflo identifies no error of law or fact warranting reversal.

First, Evenflo did not timely seek construction of any term in the '951 patent, and the district court correctly rejected Evenflo's untimely efforts to read "connected to" as contrary to law, the intrinsic record, and common sense. When Evenflo tried to introduce untimely and rejected constructions at trial, the district court provided the jury with a corrective instruction. Evenflo identifies no error in this instruction. Second, when Evenflo tried to introduce untimely claim construction testimony as

to "backrest" at trial, the district court again provided the jury with a corrective instruction. Evenflo identifies no error in that instruction either. The jury verdict is supported by substantial evidence.

***The district court properly enjoined further infringement.*** Evenflo presents several arguments to oppose the district court's injunction, but the district court did not abuse its discretion in finding ongoing competitive harm to Wonderland and enjoining Evenflo's infringement. Evenflo's request for this Court to reweigh the evidence and rebalance the *eBay* factors must be rejected.

***A new trial on willful infringement is warranted.*** Wonderland cross-appeals the district court's denial of a new trial on willful infringement. The district court erroneously excluded a key piece of evidence establishing that Evenflo knew or should have known of its infringement. Based on errors of law and clear errors of fact, the district court found this evidence was substantially more prejudicial than probative. The exclusion impacted Wonderland's substantial rights. A new trial on willful infringement and assessment of enhanced damages is warranted.

## ARGUMENT

## I. EVENFLO'S APPEAL

### A. Standard of Review

This Court reviews a denial of JMOL consistent with the law of the regional circuit—here, the Third Circuit. *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012). The Third Circuit reviews JMOL rulings de novo,

"viewing the record in the light most favorable to the verdict winner and drawing all reasonable inferences in its favor." *Id.* Under this standard, "[a] court must not weigh evidence, engage in credibility determinations, or substitute its version of the facts for the jury's," *Pitts v. Delaware,* 646 F.3d 151, 155 (3d Cir. 2011); instead, the court asks whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party," FRCP 50(a)(1).

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "An abuse of discretion occurs when a district court exercises its discretion 'based upon an error of law or clearly erroneous factual findings' or commits 'a clear error of judgment in weighing relevant factors.'" *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1336 (Fed. Cir. 2013).

**B. All Accused Products Infringe the '043 Patent**

Evenflo asserts that the Accused Products do not infringe because they lack (1) a booster with "a pair of receptacles"; (2) a seat back with a pair of attachment arms "for engagement" with those receptacles; and, for the 4-in-1 Products, (3) "a seat back having a locking mechanism" to secure it to the booster. These arguments are without merit.

### 1. All Accused Products have "a pair of receptacles"

Claim 1 of the '043 patent recites a "seat assembly having a pair of receptacles." Appx0144. At *Markman*, the parties stipulated to the district court's construction of the term "receptacle" as "a three-dimensional space sized to receive." Appx0510. The jury was instructed accordingly and found that all Accused Products infringe. Appx0107-09; *see* Appx0087-88. On appeal, Evenflo attempts to walk back its stipulation and resurrect its "bounded" construction, arguing that the district court failed to construe "pair of receptacles" to include a bounded requirement and that a "properly instructed jury could not have" found infringement. Br. 28. Evenflo cannot make an issue of fact into an issue of law.

#### a. Evenflo stipulated to the district court's construction of "receptacle"

Evenflo omits that it stipulated to the district court's construction of "receptacle" at *Markman*. Appx0510. Evenflo also omits that it did not object under *O2 Micro* at trial or propose a clarifying instruction for the jury. *See* Appx4281, Appx4313-14. Indeed, Evenflo only raised claim construction for the phrase "pair of receptacles" during its post-trial briefing. Appx4313-14, Appx4957. Evenflo cannot now claim that the district court erred by leaving claim construction for "pair of receptacles" to the jury. Br. 28.

If "parties raise an actual dispute regarding the proper scope" of that claim term, "the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v.*

*Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Here, there is no actual dispute. Evenflo cannot manufacture reversible error by arguing that the construction it agreed to before and during trial "was somehow too broad" or by resurrecting claim construction arguments that the district court already rejected. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015); *see Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("restating a settled argument does not create an actual dispute within the meaning of *O2 Micro*"). If Evenflo were correct, defendants could strategically save claim construction arguments until they drop their invalidity case, or reserve *O2 Micro* objections for post-trial briefing, and then call it reversible error. *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (defendant waives claim construction arguments and *O2 Micro* objections raised for the first time in post-trial briefing). This is the very definition of "'sandbagging': suggesting or permitting, for strategic reasons, that the [district court] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *In re Google Tech. Holdings LLC,* 980 F.3d 858, 864 (Fed. Cir. 2020).

Evenflo is incorrect that the parties "disputed on summary judgment what it means to be 'sized.'" Br. 29. Rather, Evenflo argued at summary judgment that "Evenflo's accused products do not meet the [district] [c]ourt's construction"

because "the alleged receptacles" are "unbounded" and thus "a single cavity," framing its argument as an issue of fact. Appx0690-92. The district court held that because Evenflo had "abandoned [its] earlier argument and agreed to the [district] court's suggested construction," Evenflo was "estopped from raising the argument that 'receptacles' should be defined by a bounded space." Appx3864. It explained that both sets of products had "relatively complex geometric shapes with a number of features," so whether the Accused Products have a "pair of receptacles" was a question of fact for the jury. Appx3864. That is, there was no ongoing scope dispute, and no confusion over the district court's construction at summary judgment. Evenflo simply tried to walk back its stipulation.

Evenflo's remaining arguments fare no better. First, Evenflo incorrectly asserts that it cannot be estopped because it "did not succeed." Br. 29. Evenflo was estopped by its own stipulation. Judicial estoppel "protect[s] the integrity of the judicial process" from just such gamesmanship—it "prevents parties from playing fast and loose with the courts." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Nor did Evenflo raise "purely legal issues" at summary judgment. Br. 28. It raised a non-infringement argument and, when that failed, recast the argument after trial as one of claim construction. Evenflo's citation to *Dupree v. Younger*, 598 U.S. 729, 736 (2023), is inapposite. A summary judgment motion may preserve legal claims, but it does not preserve factual claims, particularly failed non-infringement positions

later re-cast as claim construction. It was "incumbent on [Evenflo] to raise its claim construction argument" to the district court with specificity and clarity—it chose not to and cannot do so now. *Lazare*, 628 F.3d at 1376.[2]

Second, contrary to Evenflo's representations, Wonderland did not agree with Evenflo's construction, and the district court never adopted Evenflo's "bounded space" requirement. Br. 30. Wonderland simply acknowledged that one embodiment of the '043 patent showed a "bounded space" and that a car seat needs to be "three-dimensional," as "[w]e're not trying to cover flat surfaces." Appx0509-10; *see* Appx0500. The district court concluded that its construction, without "bounded," was "actually better." Appx0510.

Last, Evenflo mischaracterizes the district court's construction and Wonderland's infringement case. Evenflo asserts that "Evenflo's proposed and agreed constructions were consistent." Br. 29-30. This is not what the district court held. Appx0510, Appx3864. Evenflo wrongly asserts that without "bounded," the jury was left to decide "whether 'sized' spaces require physical boundaries or none at all." Br. 31. This is a false dichotomy. Neither the district court nor Wonderland has ever taken a "none at all" position. Rather, as Wonderland presented at trial,

---

[2] Evenflo asserts that "pair of receptacles" requires further construction because the claims also recite a "pair of attachment arms." Br. 30 n.3. Arguments raised for the first time on appeal, in a footnote, are forfeit. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). Further, no party has proposed that "pair" should carry anything other than its plain and ordinary meaning.

under the district court's construction a receptacle "doesn't need to be something that's … bounded on all sides." Appx6121; *see* Appx0509-10 ("We're not trying to a cover flat surface.").

Evenflo also claims that the district court "permitted Wonderland's expert to testify" that a receptacle "was not required to be bounded along any dimension" over Evenflo's objection. Br. 30. Not true. Dr. Cameron simply repeated the district court's construction, explaining that where the court construes a term, "we use the Court's definition," specifically "a 3D space that's sized to receive an attachment arm." Appx6077. She further explained that "receptacle" does not mean "bounded," since "that was rejected." Appx6077-78; *see* Appx6121-22. Evenflo did not object to this testimony at trial, dispute the court's construction of "receptacle," or seek clarifying instruction for the jury. *See id.* Rather, the objection Evenflo cites in its brief was raised for a different claim term and challenged Dr. Cameron's use of the word "rejected" as prejudicial. Appx6091 (Counsel for Evenflo stating "[i]t's fine if they want to get her testimony on why she disagreed, we get that. But actually talking about it [as 'rejected'] … I think it's a little prejudicial."). The district court overruled the objection, concluding that Dr. Cameron had "been careful not to say something in a disparaging way or in a mocking way," and that it was "a necessary explanation how it works." Appx6091. Evenflo can identify no abuse of discretion

in that ruling. "No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

In sum, the district court did not err in its construction of "receptacle," nor can Evenflo argue error now. All that remains is the factual question of whether the Accused Products have a "pair of receptacles." They do.

#### b. Substantial evidence supports the jury's verdict that the Accused Products have a "pair of receptacles"

Evenflo argues that "a properly instructed jury could not have found" that the accused products have a pair of receptacles. Br. 28. Evenflo's efforts to resurrect its abandoned "bounded" claim construction must be rejected. Substantial evidence supports the jury's verdict.

At trial, Evenflo showed the jury—as it showed this Court in its Brief—a limited perspective of its car seats. *See* Br. 31. In response, Dr. Cameron turned the car seat over, showed the jury the underside of Evenflo's boosters, and explained how each set of products has a pair of receptacles, with structures "specifically sized for the arms." Appx6080. For the 4-in-1 Products, Dr. Cameron showed the jury the physical exhibit, explaining:

> There are structures here specifically sized for the arms and then there's structures in here …. That's specifically sized for the CFA. … These are used in a very particular way. They sit in a space that's particularly sized for that arm and by having that arm in this space inside, that's what provides the safety.

Appx6080; *see* Appx6076-81, Appx6266-68, Appx6579-81, Appx7357-59, Appx7457-58. Indeed, Evenflo's engineer and expert identified a pair of "pockets" for receiving part of the attachment arms. Appx5750-51, Appx6492-93.



Appx7358 (schematic of underside of 4-in-1 booster, as annotated by Dr. Cameron at trial). Dr. Cameron also "enlarged" one of Evenflo's engineering drawings of the booster and highlighted "in red" the locations of "the receptacles." Appx6076-79.

For the 3-in-1 Products, Dr. Cameron again showed the jury the accused car seats, explaining:

> You maybe might be imagining it's one cavity but of course it's not. You turn it over and you see the structure right here … that's used to exactly size to the arm. … You can see the lip. You can see the wall and that's where those engagement arms are received…

Appx6122; *see* Appx6119-24, Appx6262-64, Appx7457-58. This was confirmed by testimony from Evenflo. Appx5864-69, Appx5880-82.




Appx7545 (schematic of underside of 3-in-1 booster, as annotated by Evenflo engineer during deposition); Appx7527-28.

Evenflo failed to rebut this evidence. Instead, Mr. Campbell's opinion relied on Evenflo's rejected "bounded space" construction, now dubbed "geometry … to size." Appx6549 (for the 3-in-1s); *see* Appx6491-93 (for the 4-in-1s, "[t]here's no geometry between those structural rails to size the space"). Testimony seeking to resurrect a rejected and abandoned construction is not evidence and "must [be] disregard[ed]." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357-58 (Fed. Cir. 2011). There was more than sufficient evidence for the jury to find infringement—the jury was in the "best position to determine" which expert's testimony was "more persuasive" and more consistent with the physical exhibits. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 979-80 (Fed. Cir. 2021).

Evenflo's counterarguments are without merit. Evenflo incorrectly asserts that Dr. Cameron "did not identify any structures" that "separate or 'size' the space." Br. 31-32. Dr. Cameron used the physical exhibits to walk the jury through each relevant structure, with her opinions corroborated by testimony from Evenflo. *See supra*. The jury was "in the best position" to receive the testimony, assess expert credibility, evaluate the physical car seats and weigh this evidence. *Apple, Inc. v. Samsung Elecs. Co., Ltd.,* 839 F.3d 1034, 1045 (Fed. Cir. 2016).[3] Evenflo misrepresents Dr. Cameron as "admit[ing] that if you look at the accused boosters" from a specific angle, the 4-in-1 Products only have "a giant square hole." Br. 33 (citing Appx6080-81). Dr. Cameron testified that it is "inappropriate" to hold the booster seat to hide its underlying structures, as "it gives you the impression that this is a giant square hole, which it's clearly not." Appx6080-81; *see* Appx6089. As Dr. Cameron explained on cross: "It kind of looks like that because you've hidden the structure on the seat." Appx6263; *see* Appx6266-67 (similar).

The jury is not required to view the physical exhibits only from the angle dictated by Evenflo and follow Mr. Campbell's theories over Dr. Cameron's detailed explanation. *Bayer*, 989 F.3d at 980. The jury found that the Accused Products have

[3] In a footnote, Evenflo misstates Dr. Cameron's theory as premised on "lips or slots" sizing the receptacles. Br. 32, n.4. Dr. Cameron rebutted this argument at trial: The attachment arms do not go into the "slots," the slots are structures on the interior wall that size each receptacle to receive each attachment arm and guide the attachment arms into place. Appx6264.

a "pair of receptacles." Evenflo's repetition of its preferred perspective and evidence does not change this. Even if Evenflo were correct (it is not), this Court does not "review whether [a] losing position was also supported by substantial evidence." *Apple Inc.*, 839 F.3d at 1052. The jury's infringement verdict should be affirmed.

**2. All Accused Products have "Attachment Arms … for Engagement"**

Claim 1 recites a "seat back having a pair of attachment arms … for engagement with [the] seat assembly so as to be received within corresponding said receptacles." Appx0144. At *Markman*, the district court gave the term "engagement" its "plain and ordinary" meaning. Appx0533. The jury was instructed accordingly and found that all Accused Products infringe. Appx0107-09; *see* Appx0087-88. The district court did not err in its claim construction, and the jury's verdict is supported by substantial evidence.

**a. The district court properly found that "engagement" should have its plain and ordinary meaning**

Evenflo renews its argument from summary judgment, that "engagement" means "interlocking with or otherwise attaching to." Br. 34. As the district court found, this is contrary to the intrinsic evidence.

First, Evenflo's proposed construction is precluded by the claim language. In the claims of the '043 patent, "engagement" is broader than interlocking—the attachment arms are "for engagement" with the booster base, Appx0144; "an offset

step" may "engage a correspondingly shaped depression," Appx0145; "mounting pins" may be "engagable with corresponding pivot sockets," Appx0145. To further "secure" these engaged components, dependent claims 5 and 6 add a "locking mechanism" and "latching apparatus." Appx0145; *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (valuable to consider "[o]ther claims of the patent in question, both asserted and unasserted"). Different claim terms—"engagement" versus "securing," "latching," and "locking"—have different meanings. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). In the '043 patent, "engagement" cannot require "interlocking" or "attaching" because it would render other terms in the dependent claims superfluous.

Second, Evenflo's proposed construction improperly reads in limitations from the specification. Br. 34-35. Evenflo points to one embodiment, which simply teaches dependent claim 6. The "offset step 54" and "corresponding depression 34a" to prevent "the attachment arms 41 from pulling straight rearwardly once latched into position," Br. 34-35 (quoting Appx0143), are recited nearly verbatim in dependent claim 6, Appx0145 (dependent claim 6, (reciting "an offset step to engage a correspondingly shaped depression" to "restrain linear movement" of the attachment arms). Evenflo's construction is thus incorrect twice over—it reads in limitations from the specification already captured in a dependent claim. *See*

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) ("an independent claim should not be construed as requiring a limitation added by a dependent claim"); *Phillips*, 415 F.3d at 1320 ("one of the cardinal sins of patent law" is "reading a limitation from the written description into the claims").

Evenflo's remaining two examples, "a retainer clip 42a that engages a protrusion" and a "recline paddle 65 and paddle trap members 62, 63," do not compel a different conclusion. Br. 34. "An accused infringer cannot overcome the plain meaning of a claim term simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012); *see Phillips*, 415 F.3d at 1323 (courts "have repeatedly warned against confining the claims to [specific] embodiments"). Evenflo also neglects other uses of "engagement," "lock," and "locking" in the specification, which confirm the district court's construction. Specifically, the attachment arms are "for engagement" with the booster, while the "locking mechanism" is for "selectively detachably connecting" to the booster seat. Appx0144; *see* Appx3867. That is, consistent with the claim language, the patent uses "'locking' or 'lock' to refer to two components being interlocked or attached to one another"—not "engagement." Appx3867; *see* Appx0145. "Engagement" takes its "plain and ordinary" meaning.

### b. The jury heard Evenflo's arguments as to "engagement" and still found infringement

Evenflo asserts that the district court "erred as a matter of law by refusing to construe" the term "engagement." Br. 34. The district court twice considered Evenflo's claim construction arguments for "engagement" before trial. Each time, the district court (under two separate judges) rejected Evenflo's "interlocking" position as "too narrow" and adopted the term's plain and ordinary meaning. Nevertheless, the district court permitted Evenflo's expert to opine to the jury—over Wonderland's objections—that a PHOSITA would understand "engagement" to mean "to come together and interlock." Appx6534; *see* Appx6535-36 ("[y]ou would have to have an additional piece of geometry like that pin in order for them to interlock"). Evenflo's expert said this was based on his read of "the claim language" and "relevant description within the patent." Appx6528-30.

Wonderland, not Evenflo was prejudiced by the district court's rulings at trial that Evenflo now challenges. Br. at 34. Evenflo improperly used expert testimony "to arrive at a claim construction that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history." *Key Pharms. v. Hercon Lab'ys Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998); *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (expert testimony "may not be used to vary or contradict the claim language"). Evenflo cannot strategically use expert testimony to create an *O2 Micro* issue by

"resurrect[ing] a claim construction that the district court already rejected," and cannot claim reversible error when the district court permitted Evenflo to present the jury with the expert testimony and extrinsic evidence it claims supports its case. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010).

Evenflo's counterarguments are without merit and internally contradictory. First, Evenflo misrepresents that Wonderland "never identified a specific meaning" for engagement. Br. 36. At trial, Dr. Cameron testified on how a PHOSITA would understand the plain and ordinary meaning of engagement, consistent with the court's claim construction. Specifically, she walked the jury through the process of structurally integrating the seat back with the seat assembly using the attachment arms and explained that the attachment arms are "for engagement" because they "are received in the receptacles to provide that strength and safety … as you assemble the seat, that's the engagement that's happening with the arms to let that occur." Appx6106-07; *see* Appx6106 (emphasizing the importance of "providing … structural integrity" for "engagement"). The jury was entitled to credit her testimony.

Second, even though it argues that Wonderland did not provide a "specific meaning" for "engagement," Evenflo asserts that the district court erred by "refusing to resolve this legal dispute" by "submitting it to the jury as a question of fact." Br. 37. Evenflo cannot show, however, that Evenflo's requested "definition would

negate infringement," *Finjan,* 626 F.3d at 1207—Evenflo presented its interlocking argument, through expert testimony, to the jury. Appx6528-30, Appx6535-36, Appx6552-53. The jury credited, as it was entitled to do, Wonderland's expert testimony and evidence over Evenflo's, and determined that the Accused Products have attachment arms "for engagement" under that term's plain and ordinary meaning. *See Bayer*, 989 F.3d at 980.

Further, Evenflo's position is undermined by its own arguments at *Markman*. Evenflo argues legal error because the plain and ordinary meaning of "engagement" cannot include "move into position." Wonderland and its expert did not take this position. But Evenflo did. Evenflo's proposed construction at *Markman* was "to interlock with *or fit into and move together with*." Appx0309-11. Indeed, during the *Markman* hearing, Evenflo's counsel advocated for this construction as consistent with the intrinsic evidence because it "goes to the structural integration of the back rest and in the bottom of the seat." Appx0523-24, Appx0526. Evenflo cannot claim that presenting the jury with its own proposed construction was somehow harmful.

**c. Substantial evidence supports the jury's verdict**

The jury found all Accused Products have a "pair of attachment arms projecting generally perpendicularly outwardly relative to [the seat back] for engagement with the seat assembly." "Literal infringement requires that each and

every limitation set forth in a claim appear in an accused product." *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1358-59 (Fed. Cir. 2002). This finding is amply supported by the record, including expert testimony and admissions from Evenflo.

**i. The Accused Products literally have "attachment arms … for engagement"**

The 4-in-1 Products literally infringe because their attachment arms are "for engagement" with the seat assembly. For the 4-in-1 Products, Dr. Cameron opined that the attachment arms are "for engagement" because they "are received in the receptacles to provide that strength and safety and they're—as you assemble the seat, that's the engagement that's happening with the arms to let that occur." Appx6106-07; *see* Appx6106 (emphasizing the importance of "providing … structural integrity" for "engagement"); Appx6104-12, Appx6154-55; *see also* Appx5842 (Evenflo engineer, explaining the guide horns "guide the base into its home"); Appx6453 (Mr. Campbell, same).

For the 3-in-1 Products, Dr. Cameron explained the seats literally infringed because they were "particularly designed" for the attachment arms to "glid[e]" into the receptacles—that is "what makes [the seat] easier to assemble"—and "to

engage," like the 4-in-1 Products, for structural integrity. Appx6156-57; *see* Appx6154, Appx6157-58 (emphasizing that engagement is for "structural integration" and "so that you can structurally integrate the two parts together" for safety and "structural stability").

Evenflo failed to rebut this evidence. Mr. Campbell's opinions on engagement were premised on a twice-presented and twice-rejected claim construction, and such testimony, "based on an incorrect understanding of the [district court's] claim construction," is not evidence and "must [be] disregard[ed]." *Cordis Corp.*, 658 F.3d at 1357-58. There was, therefore, more than sufficient evidence for the jury to credit Dr. Cameron and conclude that the attachment arms are "for engagement." *Bayer*, 989 F.3d at 979-80.

Evenflo's counterarguments are without merit. First, Evenflo's arguments are premised on accepting Evenflo's faulty claim construction. Br. 37. Evenflo argues that there is no "engagement" because the attachment arms do not "touch" the booster base and "lack any structure" or have a "smooth and flat surface." Br. 37-38. These arguments are contrary to the claim language. Because Evenflo's claim construction is incorrect, its non-infringement arguments should be similarly rejected. Further, as Dr. Cameron explained, a PHOSITA would understand that the plain and ordinary meaning of "engagement" does not require contact. Appx6155; *see* Appx6107-08, Appx6585-87. The jury was entitled to credit that testimony.

Second, for the 4-in-1 Products, Evenflo raises a cursory challenge of Wonderland's mapping of "attachment arms" to the pair of rails and horns. Br. 38-39. Evenflo mistakenly asserts that the jury "was correct to find no literal infringement." *Id.* Wonderland, however, did not offer a DOE argument for "attachment arms," only for the term "engagement"; accordingly, the jury found literal infringement for "attachment arms." *Apple,* 839 F.3d at 1040 (courts "presume the jury resolved all underlying factual disputes in favor of the verdict"). Further, the jury's finding of "attachment arms" is supported by substantial evidence. Dr. Cameron, with reference to the physical exhibits, schematics, and owner manuals, explained that, in the 4-in-1 Products, the attachment arms are composed of a pair of structural rails connected to a pair of horns, which are embedded in and project generally perpendicularly from the seat back. Appx6097-6104, Appx6161-67; *see* Appx7373, Appx7432; *see also* Appx5744. The jury was entitled to credit Dr. Cameron and had more than enough evidence to find that the accused products had attachment arms. *Bayer*, 989 F.3d at 979-80.

Evenflo's identification of alternative evidence does not alter this. Br. 38-39. First, it reads in limitations not present in the claims. There is no "separately formed" limitation, *see* Br. 39—the claims "define the invention." *Phillips*, 415 F.3d at 1312. It also misrepresents the facts. Each horn and rail are "connected to" each other—they are screwed together. Appx6171-72. Third, it asks the court to reweigh

the facts—that is improper on substantial evidence review. As Dr. Cameron explained, it is "really common in engineering structures" to "manufacture[] [components] separately and then screw[] [them] together." Appx6163-64. The jury was entitled to credit this evidence.

**ii. The Accused Products have "attachment arms … for engagement" under DOE**

Dr. Cameron further opined that the Accused Products still infringed under DOE, even if you accepted Evenflo's position that "you needed something beyond" engagement. Appx6111 (4-in-1s); *see* Appx6157-58 (3-in-1s). Dr. Cameron explained that, in this case, the Accused Products had "attachment arms … for engagement" under DOE under the function-way-result test. Evenflo asserts that Wonderland's DOE theory violated the "all-elements rule" and lacked sufficient evidentiary support. Br. 39-48. Evenflo's arguments are premised on misunderstandings of law and misstatements of fact.

Evenflo misstates and misapplies the "all-elements rule." Br. 41. The all-elements rule requires "limitation-by-limitation" equivalence, not word-by-word correspondence. *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007). "[P]roof of equivalents must be limitation specific, not focused only on the claim as a whole." *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1342 (Fed. Cir. 2023). "Vitiation is not an exception to the doctrine of equivalents, but instead a legal determination that the evidence is such that no reasonable jury could

determine two elements to be equivalent." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015).

Evenflo's cases say nothing different: *Warner* emphasizes that the equivalence analysis must be informed by "the context of the specific patent claim." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997). *Pfizer* similarly emphasizes the "totality of the circumstances" in the DOE analysis, and explains that "[t]he all limitations rule provides that the doctrine of equivalents does not apply if applying the doctrine *would vitiate an entire claim limitation*." *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005) (emphasis added). *Advanced Steel* provides that "[g]eneralized testimony as to the overall similarity" between claims and a product is insufficient, such that a patentee "cannot merely point to other claim limitations to satisfy the doctrine of equivalents." *Advanced Steel Recovery, LLC*, 808 F.3d at 1320.

In short, Evenflo's analysis "illustrates the confusion sometimes encountered because of misunderstanding or misleading uses of the term 'element' in discussing claims. … In the All Elements rule, 'element' is used in the sense of a *limitation* of a claim." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989); *see Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998) ("[O]ne-to-one correspondence of components is not

required, and elements or steps may be combined without ipso facto loss of equivalency.”).

Evenflo also mischaracterizes Dr. Cameron’s DOE theory to conclude she failed “to provide specific, element-by-element opinions that demonstrate equivalence.” Br. 41. Specifically:

For function, Evenflo incorrectly says Dr. Cameron identified “being ‘received in the receptacles.’” Br. 41. Dr. Cameron testified that the “function” is “to structurally integrate th[e] attachment arms.” Appx6111 (4-in-1s), Appx6157-58 (3-in-1s). This is consistent with the plain language of the claim, the specification, and the inventor’s conception of “for engagement.” *See supra*; Appx0473, Appx0482-83. Dr. Cameron did not “concede[]” that she read “engagement” and “received” as the same—rather that she read the words of the claim limitation together, in the normal way of language. Appx6242 (“I kind of read them together … [s]o you have engagement so as to be received within the corresponding receptacles.”). “[T]he context of the surrounding words of the claim also must be considered in determining” a term’s meaning and in establishing DOE. *Phillips*, 415 F.3d at 1314 (citation omitted); *see Warner-Jenkinson,* 520 U.S. at 40.

For way, Evenflo incorrectly asserts that Dr. Cameron’s theory “was premised on the alleged arms ‘extend[ing] outwardly.” Br. 42. Dr. Cameron explained that the “way” that engagement happens is that “those arms that extend outwardly away

from the seat back *into the seat assembly*, the seat bottom." Appx6111 (4-in-1s) (emphasis added); *see* Appx6158 (3-in-1s). That is, the Accused Products have the exact structure identified in the claim—attachment arms on a seat back that go into corresponding receptacles on a booster, thereby engaging the seat back with the booster—the components are "shaped, supported, moved, [and] positioned" in the same way, and thus achieve the recited limitation in substantially the same way. *Atlanta Motoring Accessories, Inc. v. Saratoga Techs., Inc.*, 33 F.3d 1362, 1367 (Fed. Cir. 1994); *see id.* ("application of doctrine of equivalents proper only when changes from patent's claimed structure are insubstantial").[4]

For result, Evenflo misstates that Dr. Cameron "point[ed] to the 'lock' element." Br. 42. Dr. Cameron testified that the result is "that structural stability to the car seat when the seat back is assembled to the seat bottom" without any reference to the locking mechanism. Appx6111 (4-in-1s), Appx6158 (3-in-1s). Evenflo raises no counterarguments to Dr. Cameron's actual position.

In sum, Dr. Cameron thus provided "particularized testimony and linking argument" to support that the attachments on all Accused Products are "for engagement"—the function of "engagement" is structural integrity, this is achieved in the Accused Products using the same structure (that is, way) as the patent, and

---

[4] Evenflo cites *Atlanta Motoring* to support its result argument. Br. 42. As Evenflo's parenthetical notes, the case is about structural differences and the "way" prong, not result. *Id.* It is therefore inapposite.

achieves the same result, structural stability. *AquaTex*, 479 F.3d at 1324; *see, e.g.*, *Cordis Corp.,* 561 F.3d at 1330 (finding expert testimony on DOE sufficient to support jury verdict on similar testimony). There was, therefore, more than sufficient evidence for the jury to credit Dr. Cameron and conclude that the attachment arms are "for engagement." *Bayer*, 989 F.3d at 979-80. Evenflo's disagreement with that evidence is not a challenge to the substantiality of that evidence. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent … [a] finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Evenflo's three proffered examples, in addition to misstating Dr. Cameron's theories and testimony, do nothing to change this. Dr. Cameron did not identify the "function" of attachment arms as "being 'received.'" Br. 43; *see* Appx6111, Appx6157-58. Dr. Cameron never identified the 4-in-1 Products' "horns" by themselves as the attachment arms; rather, she consistently identified the rails with the horns together. Appx6101.[5] Dr. Cameron did not state that the 4-in-1 Products' rails and horns provide structural stability "from screwing them into the shell," Br. 44 (citing Appx6101-02), but that each horn and rail are screwed together to

[5] Further, for the 4-in-1 Products, Mr. Campbell expressly admitted that the horns meet even his definition of "engagement." Appx6530 (agreeing that the "horn engages the booster"). As noted above, the jury already found that the horns, with the structural rails, literally meet the attachment arm element.

make an attachment arm, "[s]o this whole part of the arm when you put it inside the seat assembly, that's what's giving you the stiffening, that's what's allowing you to guide the base on, that's what's providing the engagement." Appx6102.

In sum, Evenflo's selective quotation and misrepresentation provide no basis to overturn the jury's infringement verdict. The jury heard all the evidence, assessed the credibility of the witnesses and their testimony, weighed it, and made a finding of infringement. It is well established that "[i]t is not the province of an appellate court to second guess the jury's credibility determinations or to reevaluate the weight to be given the evidence." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1192 (Fed. Cir. 1998). Evenflo's attempts to recast theories and rewrite the record into a position it can defend on appeal should be rejected.

### 3. The 4-in-1 Products Have a "Locking Mechanism"[6]

Claim 1 recites a "seat back having a locking mechanism for selectively detachably connecting said seat back to [the] seat assembly." Appx0144. Neither party sought construction of "seat back having a locking mechanism"; as such, the term took its plain and ordinary meaning. The jury found that all Accused Products infringe. Appx0107-09. The district court did not err in its claim construction, and the jury's verdict is supported by substantial evidence.

---

[6] Evenflo does not contest the 3-in-1 Products have a "locking mechanism" as recited in claim 1. Appx6553.

#### a. Evenflo cannot vary the plain meaning of "a seatback *having* a locking mechanism"

Evenflo argues that the 4-in-1 products do not have a "locking mechanism" because, according to Evenflo, the locking mechanism must be "on" the seat back. Br. 44-45. However, the claim recites a seat back "having" a locking mechanism, not a locking mechanism "entirely on" or even "on" a seat back. Appx0144. Evenflo never sought a claim construction of "locking mechanism," *see* Appx4313-14, and it cannot seek to vary its plain meaning now. The argument is forfeit. *See Broadcom,* 543 F.3d at 694.

Nor can Evenflo establish that its interpretation is the "only reasonable" interpretation. *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048 (Fed. Cir. 2016). Evenflo's construction is contrary to the intrinsic record. Independent claim 1 recites a "seat back *having* a locking mechanism," not a locking mechanism "on" a seat back. Appx0144. Claim 1 is not limited to a specific configuration or even type of locking mechanism. *Id.*; *see* Appx0145 (dependent claim 8, narrowing to a specific kind of locking mechanism). The specification's primary embodiment confirms this reading, as it has a locking mechanism distributed across both the seat back and booster base, with mounting pins located on the seat back latched into the sockets on the booster base. Appx0143; *see* Appx0129.

Evenflo's construction is contrary to the extrinsic record. Dr. Cameron testified a PHOSITA would understand that "[t]here's no requirement, and it would

be nonsensical for all of the parts of the locking mechanism to be on one" side, and that a PHOSITA would understand a locking mechanism would need "to be on the two parts that are being locked together." Appx6584. That is, claim 1 plainly requires "a seat back having a locking mechanism."

Evenflo's quotation to the specification, disclosing "a seat back locking mechanism," does nothing to contradict the claim's plain meaning; nor does Evenflo's citation to figures in the specification limit claim 1 to a specific locking mechanism type or configuration. Br. 45. Embodiments are not claim limitations. *See Phillips*, 415 F.3d at 1323. Evenflo's limited read of "locking mechanism" is thus, without support. As the district court explained at summary judgment, Evenflo's arguments, then framed as fact-based challenges, are a "significant departure from the claim requirements, the embodiments described in the patent, and from the basic understanding of a [PHOSITA]." Appx3870. Indeed, it is "difficult to imagine how a locking mechanism could exist that is able to selectively connect two physical structures together without at least one portion of the mechanism being located on each structure." Appx3871; *see* Appx6087 (Dr. Cameron explaining the same to the jury).

**b. Substantial evidence supports the jury verdict that the 4-in-1 products have a "locking mechanism"**

The jury found the 4-in-1 products have a locking mechanism as recited in claim 1. Whether this was by literal infringement or under the doctrine of

equivalents, substantial evidence supports the finding. At trial, Dr. Cameron explained that the 4-in-1 products have a lock rod on the seat back and corresponding spring-loaded hooks on the booster, which "together with that rod" make "a locking mechanism" as recited in claim 1. Appx6085-88, Appx6583-85; *see* Appx6244-45, Appx6250, Appx7343-47; Appx7352, Appx7435. Evenflo's engineer and expert confirmed that the 4-in-1 Products have a locking mechanism. Appx5743-44 (Evenflo engineer, identifying a "lock rod," confirming that it is necessary "to secure the seat base"), Appx6455 (Mr. Campbell, identifying "locking mechanism" and "lock rod"). Dr. Cameron further explained that, even accepting Evenflo's counter-textual requirement that the spring hooks be on the seat back, the 4-in-1 Products still infringed under DOE because there were "no substantial differences" in having the spring hooks on the seat back or booster base, since it is the "overall same mechanism," while showing the jury how the mechanism worked. Appx6583-85; *see* Appx6089-99. Indeed, at trial, Evenflo conceded that the 3-in-1 Products have a locking mechanism, with a simple flip of the parts. Appx6553.

In contrast, at trial, Mr. Campbell offered there was no "locking mechanism" because "the locking mechanism is *on* the booster base and not *on* the seat shell." Appx6542-43 (emphasis added). The jury was not required to read the claims counter to their plain meaning, nor required to credit Mr. Campbell's conclusion.

Substantial evidence supports the jury's verdict, and Evenflo's contrary read of the evidence does not change that.

Evenflo's counterarguments are without merit. First, Evenflo asserts that "[a]t summary judgment and trial, Wonderland pointed to the metal rod—denominated as a 'lock rod'—of the seat shell" of the 4-in-1 Products "to allegedly meet this limitation." Br. 45. Not so. Wonderland has consistently identified a combination of the lock rod on the seat back and the spring hooks on the booster base as forming the recited locking mechanism. Appx6249-50 ("The locking mechanism has both parts."); *see* Appx2696-98 (similar). Indeed, Evenflo acknowledges as much. Br. 46.

Evenflo then asserts that "[t]he only accused feature *on* the seat back is an immovable lock rod." Br. 46 (emphasis added). The claim plainly recites a seat shell "having" a locking mechanism, not that the locking mechanism be "on" a seat back. Appx0144; *see* Appx6086-87. Nothing in the claim requires the part of the locking mechanism on the seat back to be movable. Appx6086-87, Appx6583-84. Evenflo reads in a nonexistent limitation, "on," through an unsought claim construction of "having." This does not avoid infringement.

Second, Evenflo asserts that "Wonderland's expert rewrote the claim to require only 'a car seat with a lock.'" Br. 45-46. This misstates the record. Claim 1 recites a "seat back having a locking mechanism for selectively detachably

connecting said seat back to said seat assembly." Appx0144. Dr. Cameron mapped the 4-in-1 Products directly to this claim language, identifying a lock rod on the seat back and spring hooks on the booster, that together, formed a locking mechanism that selectively detaches the seat back and booster. Appx6086-87, Appx6583-85 ("[F]or both of these, you have the hooks plus the rod. That's the locking mechanism. It doesn't matter what side they're on, and the claim language is clear. It says the seat back having the locking mechanism.").

Third, Evenflo asserts that Dr. Cameron's DOE analysis was conclusory. Br. 47. Evenflo misstates Dr. Cameron's opinion. Dr. Cameron provided particularized testimony, explaining that the locking mechanism for the 4-in-1 Products is the same as that for the 3-in-1 Products (which Evenflo does not dispute infringes), with the placement of the hooks and bar reversed, and that reversal causes "no substantial differences" and is the "overall same mechanism." Appx6584-85; *see* Appx6089-90. Dr. Cameron was not required to provide testimony under the function-way-result test. *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (noting "two articulations of the test for equivalence," one is "insubstantial differences," the other is "function-way-result"). She provided testimony as to "only insubstantial differences between the invention as claimed and the alleged equivalent." *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d 1355, 1360 (Fed. Cir. 2003).

Nor does Dr. Cameron's testimony "vitiate[] the 'seat back having a locking mechanism' limitation" as Evenflo alleges. Br. 48. Again, the claim recites a seatback "having" a locking mechanism, not a locking mechanism "on" a seatback. Appx0144. The claim does not recite a specific location, and even if it did, an element "need not be in the exact same location specified by the claim" for infringement under DOE. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996). Evenflo's list of cases say nothing different—rather, they emphasize that there "is no set formula for determining whether a finding of equivalence would vitiate a claim limitation." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005). The "vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because [DOE], by definition, recognizes that an element is missing that must be supplied by the equivalent substitute"—it is error "to shortcut this inquiry by identifying a 'binary' choice in which an element is either present or 'not present.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). Here, substantial evidence supports the conclusion that the 4-in-1 Products have "a seatback having a locking mechanism."

### C. The Accused Products Infringe the '951 Patent

The jury found that the 4-in-1 Products infringe independent claim 1 and dependent claim 5, and the 3-in-1 Products infringe claim 1. Appx0107-09. Evenflo

raises two challenges based on claim 1—that they lack a (1) "pulling member connected to a connecting member", and (2) a "backrest movably disposed on the engaging board." Neither challenge undermines the jury's verdict.

### 1. All Accused Products have a "pulling member connected to a connecting member"

The '951 patent recites "a driving device" that includes a "pulling member connected to a connecting member." Appx0159. Evenflo did not seek construction of "connected to" at *Markman*. Appx0309-11. Rather, it raised the issue as part of its non-infringement arguments at summary judgment. Appx0685-87. Evenflo argued that *Becton* requires the "pulling member" and "connecting member" be two physically separated pieces. *Id.* (citing 616 F.3d at 1254-55). The district court rejected this argument and construed "connected to" as having its "plain and ordinary meaning," which "can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material." Appx3878; *see* Appx3881.

At trial, Evenflo then re-introduced its rejected interpretation of "connected to," characterized as the term's purported plain and ordinary meaning. Appx4364-65; *see* Appx4036-37, Appx4313-14, Appx4465-66, Appx4494-95. As a result, the district court further clarified its construction, explaining "connected to" "can refer not only to separate pieces that are later connected, but also to different parts or features that are discrete yet formed out of a continuous base material." Appx3878;

*see* Appx0087-88. Substantial evidence supports the jury's findings of infringement, and Evenflo offers no proper basis to alter the jury's verdict.

**a. The District Court properly construed "connected to"**

The district court correctly concluded that "connected to" should be given its plain and ordinary meaning, without requiring that two connected claim elements be physically separated. Appx0087-88; *see* Appx3878-81.

The claim language supports this construction. Claim 1 recites a "pulling member connected to a connecting member." Appx0159. It is an apparatus claim, and does not recite a specific process or way of connecting the "pulling" and "connecting" members, only that they are connected "for driving the first end of the engaging member to rotate relative to the backrest." Appx0159. Evenflo's injection-molded plastic theory, *see* Br. 54, "improperly tries to mix method and apparatus claims," and would read manufacturing process limitations into an apparatus claim. *Rsch. Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 873 (Fed. Cir. 2010). "Apparatus claims do not need to recite every method of making the claimed apparatus." *Id.* (discussing written description requirement).

The specification also supports this construction. "Connected to" as used in the '951 patent includes different types of connection, including between elements that are not physically separated. For example, "[t]he headrest portion 15 is connected to the body portion 17 *closely and formed integrally* and movable

synchronously with the body portion 17…." Appx0157 (emphasis added); *see* Appx0149. The '951 patent also teaches, "[t]he protruding shaft 19 of the engaging board 16 can be connected to a concave hole (not shown) of the seat body 12." Appx0157; *see* Appx0149-50, Appx0152. "Connected to" therefore cannot be limited to only one embodiment or method of construction, or read to require that all connected elements be physically separated. *Phillips*, 415 F.3d at 1321.[7]

Evenflo misstates *Becton* and related cases to argue that "separately-recited components 'connected to' one another invokes a presumption of physical separateness." Br. 49. *Becton* stands for the well-established proposition that "[w]here a claim lists elements separately, the clear implication of the claim language is that those elements are 'distinct component[s]' of the patented invention." *Becton*, 616 F.3d at 1254 (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)). This is an extension of principal that "claims must be interpreted with an eye toward giving effect to all terms in the claim." *Id.* at 1257.

*Becton* does not mandate a structural definition of "connected to," require that components be connected in a particular way, or that connected elements be previously formed from two different pieces of plastic. *See Becton,* 616 F.3d at 1254-55. *Becton* does not stand for the illogical proposition that "connected to"

---

[7] The district court did not err in considering extrinsic evidence. Br. 53 n.8. Dictionaries are relevant, particularly as here, to confirm what the intrinsic record already teaches. *Phillips*, 415 F.3d at 1318; Appx3879-80.

always means "physically separate," as Evenflo now argues. *Becton*'s rationale was intended to avoid "nonsensical" results, not compel one. *Id.* at 1255. Rather, under *Becton*, claims must still be "construed to require separate structures"—that is, the intrinsic record still controls. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231 (Fed. Cir. 2011) (citing *Becton*, 616 F.3d at 1254).

In application, the *Becton* court concluded that a "hinged arm" and a "spring means" could not be mapped to the exact "same structure" for infringement, because the intrinsic record showed they were not "one and the same." *Becton,* 616 F.3d at 1254. Evenflo's cited cases, *see* Br. 51, simply confirm this. *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996) ("second" and "return portion" are not "one and the same"); *Gaus*, 363 F.3d at 1288 ("probe networks" and "operating unit" "distinct"). Here, as required by *Becton* and the district court's construction, Wonderland identified two functionally distinct, "discrete elements" that are "connected to" each other. Appx3878; *see Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1304 (Fed. Cir. 2011) (declining "to exclude from the scope of the claims [two components] that form distinct portions of a single structure" where the two components "serve different purposes" and "cover distinct structural portions of an integral structure").

Evenflo asserts that the intrinsic evidence, including prosecution disclaimer, supports its preferred construction. Br. 50-54. Evenflo did not develop these

arguments in district court. Appx0685-87. They are forfeited. *See Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006). They are also meritless. First, Evenflo asserts that "every disclosure in the specification" supports the conclusion that "'connected to' requires multiple structures," but Evenflo points to no disclosure requiring that the "pulling member" and "connecting member" be two physically-separated pieces. Br. 52. Second, the prosecution history does not support Evenflo's alleged prosecution disclaimer. Br. 53-54. Prosecution disclaimer requires a "clear and unmistakable disclaimer of claim scope." *Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017). Here, Evenflo cited prosecution history evidences only that all the limitations of the allowed claim 2 were incorporated into claim 1. Appx1002 ("Claim 1 has been amended to include all limitations recited in original claim 2 …"). No scope was disclaimed.

Evenflo's citations to *Regents* and *Wi-Lan*, Br. 49, compel no different conclusion. The first provides a detailed analysis of the intrinsic record of another patent that "fully supported" a "separateness requirement." *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 935-39 (Fed. Cir. 2013). The second provides a brief affirmance of a district court's claim construction. *See Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1378 (Fed. Cir. 2021). Neither creates a per se rule. Each is, at best, extrinsic evidence on the meaning of different claim terms

in unrelated patents. Here, the intrinsic record supports the district court's construction.

### b. Substantial evidence supports the jury's verdict

For both sets of Accused Products, Dr. Cameron gave a detailed explanation using Evenflo's schematics and physical car seats to describe how all components worked together in keeping with the claimed invention. Dr. Cameron explained that, while the "driving device" in Evenflo's car seats was "manufactured as one piece of plastic" through injection molding, it had two discrete components, with two discrete functions: first, a handle to grab (the pulling member)[8] and, second, a stem (the connecting member) connected to the handle, which pivotally connects to and rotates an internal disk[9] (the engaging member). Appx6190-91; *see* Appx6193-97; Appx6576-79. Evenflo even colored these two parts pink and orange, respectively, in its engineering drawings, emphasizing that the pink handle portion was polished for consumer use and the orange portion was not polished because it functioned in a manner consumers could not touch it.

[8] Evenflo did not dispute the jury's finding on infringement of claim 5, which specifically identifies the pink part as a "handle." Appx6209.

[9] This disk is the "engaging member." Its mapping is not in dispute here.




Appx7366; *see* Appx6200, Appx6577.

For the 3-in-1 Products, Dr. Cameron explained that the infringing component was structured and functioned similarly to that of the 4-in-1 Products, with a "driving device" that is a "combination of these two parts, so you have the [internal] connecting member" in "orange" to pivotally connect to and rotate an internal disk, and the external "pulling member" in "pink" so the user can manipulate the connecting member, and thereby, the internal disk.[10] Appx6215-16; *see* Appx6216-20 (the "mechanisms" between 4-in-1 and 3-in-1 products "are pretty similar with

10 This disk is the "engaging member." It's mapping is not in dispute here.

one subtle difference"). Dr. Cameron explained that these colors were indicative of different functions—one part "you grab" and another "interfac[ing] with" the internal disk. Appx6577-79; *see* Appx6190-93 (the orange part is "not accessible to the user," does not need a "nice finish," and "connects the" handle "with that disk that rotates").

Evenflo's non-infringement arguments are predicated on accepting Evenflo's incorrect claim construction. Br. 54. Indeed, Evenflo's expert offered only testimony that was directly contrary to the Court's claim construction and conclusory. Appx6485. The jury was not required to credit Mr. Campbell's assertions over Dr. Cameron's explanation. *Summit 6,* 802 F.3d at 1299; *see Cordis Corp.*, 658 F.3d at 1357–58 (affirming the district court's disregard of expert testimony based on an incorrect claim construction at JMOL). The jury's finding that the Accused Products have a "pulling member connected to a connecting member" is supported by substantial evidence.

#### 2. The Accused Products have a "backrest movably disposed on the engaging board"

The '951 patent claims a "backrest movably disposed on the engaging board." Appx0159. Evenflo argues that the Accused Products do not meet this limitation because, using Evenflo's terminology, it has a headrest that is movably disposed on the engaging board. Br. 55. This is not a claim construction issue. Evenflo never sought a claim construction for the term "backrest," and did not request or raise any

claim construction argument relating to "backrest" until after trial. *See* Appx0310-11, Appx4950. Litigants like Evenflo "waive their right to present new claim construction disputes if they are raised for the first time after trial." *Conoco*, 460 F.3d at 1359. "[I]t is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation." *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1321 (Fed. Cir. 2003).

At trial, "backrest" took its plain and ordinary meaning. Appx0087-88*; see VLSI Tech.*, 87 F.4th at 1341 ("When a claim phrase is not construed," this court "defer[s] to the jury's view of the claim element unless that view is contrary to the only reasonable view of the claim element."). As Dr. Cameron explained, the way Evenflo uses "headrest" and "backrest" in its own terminology is not dispositive for infringement because "we need to use the language of the patent," Appx6172-74, and the claims and the specification of the '951 patent disclose a backrest that "a child can lie on or lean against" and that may include a "headrest portion." *See, e.g.*, Appx0149, Appx0157, Appx0160.

Indeed, according to Dr. Cameron, "the way the patent describes the backrest … is the headrest" in Evenflo's terminology—*i.e.*, the part that the back side of the child rests on and, as emphasized by the patent, is movable to be adjusted as the child grows. Appx6174; *see* Appx6172-76; *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019) (if the Court

"does not construe a term or orders that the ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury."). For the 4-in-1 Products, Dr. Cameron specifically explained that "what Evenflo calls the headrest. . . that's the backrest." Appx6176-77, Appx6187-88. Her testimony was supported with reference to the physical exhibits, Evenflo manuals, and testimony from Evenflo engineers. Appx7360-62, Appx7373, Appx7437; *see* Appx5892-93 (discussing Appx7360-62, confirming that the headrest extends to the "upper back of the child"); Appx5753-55, Appx5846-47 (similar). Dr. Cameron then did the same for the 3-in-1 Products, identifying the "backrest" as based on Evenflo's own disclosures. Appx6204-06 (discussing schematics Appx7534, "this is the engineering drawing for the backrest, which, again, Evenflo calls the headrest"); *see* Appx7490, Appx7517, Appx7534. Substantial evidence supports the jury's verdict.

In rebuttal, Evenflo's expert offered an opinion predicated on the jury accepting Evenflo's terminology as to what it calls the "backrest" and "headrest," which conflicts with the language of the patent. Appx6482-84. This led the Court to call a side bar, give a curative instruction, and give a similar jury instruction. Appx6470-81; *see* Appx0087-88. Expert testimony "may not be used to diverge significantly from the intrinsic record." *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022); *see Phillips*, 415 F.3d. at 1318 (similar).

Both parties presented evidence and expert testimony regarding the Accused Products' backrest, and the jury ultimately returned a verdict for Wonderland. The jury was not required to credit Mr. Campbell's testimony over Dr. Cameron's. "Disputes over the expert's credibility or over the accuracy of the underlying facts are for the jury." *Summit 6,* 802 F.3d at 1299. Evenflo's argument is just another request that this Court reweigh the evidence under Evenflo's untimely claim constructions. Br. 56-57. It should be rejected and the jury's verdict should be affirmed.[11]

**D. The Injunction Should Be Affirmed**

The district court carefully weighed the evidence, considered the parties' arguments, and then concluded in a detailed opinion that all four *eBay* factors weighed in favor of issuing a permanent injunction. Appx0001-19. Weeks later, the district court again considered the parties' arguments and evidence—including the purported error that Evenflo now raises on appeal—and denied Evenflo's emergency motion to stay the injunction pending this appeal. Appx0021-43. Then, after considering many of Evenflo's same arguments, this Court lifted a temporary stay

[11] Evenflo also asserts that the district court erred by entering judgment that the 3-in-1 products infringe dependent claim 5. This was a clerical error in the district court's amended judgment, with no impact on its judgment of infringement, calculation of damages, or any substantial right of either party. It is therefore not a proper subject for appeal and is better raised in a Rule 60(a) motion. 28 U.S.C. § 2111; *see* FRCP 60(a).

of the district court's injunction and permitted the injunction to take effect as to the '043 patent. *See* Dkt. 5, 21.

In this fourth attempt to challenge the district court's injunction, Evenflo makes two primary arguments, neither of which constitutes an abuse of discretion. First, Evenflo challenges the district court's award of an injunction with respect to the '951 patent, but that award was not legal error, or is, at most, harmless. Br. 58-59. Second, Evenflo argues the district court should not have found that Evenflo's infringement causes irreparable injury to Wonderland, and that monetary damages are inadequate to compensate for that injury. Br. 59-63. Evenflo does not challenge the district court's evaluation of the other *eBay* factors, but instead improperly invites this Court to reweigh the evidence for the first two factors based on attorney argument about that evidence. *Id.* This Court should affirm the district court's well-reasoned injunction order.

**1. Evenflo Fails to Identify Any Reversible Legal Error**

Evenflo first asserts that the district court committed legal error when it included the '951 patent within the scope of the injunction. Br. 58-59.[12] Not so.

---

[12] Evenflo's categorical statement that Wonderland cannot obtain an injunction due to a lack of practicing and licensing the '951 patent, Br. 58, is simply incorrect. "Even without practicing the claimed invention, the patentee can suffer irreparable injury." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363-64 (Fed. Cir. 2012); *see also Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("a party that does not practice the asserted patent may still receive an injunction when it sells a competing product") (collecting cases);

District courts have "broad discretion in determining whether the facts of a case warrant an injunction and in determining the scope of the injunctive relief." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 945 (Fed. Cir. 1992). The district court, sitting in equity, was entitled to enjoin further infringement of both asserted patents where the jury found both patents infringed, and the district court concluded that the *eBay* factors were satisfied for each patent. *See, e.g.*, Appx0010-11, Appx0016-17, Appx0121.

Even if this Court were to conclude that the district court erred by including the '951 patent, any such error is harmless and provides no basis to disturb the injunction as to the '043 patent. The district court already rejected Evenflo's concerns when it declined to stay the injunction—a fact that Evenflo fails to mention in its brief. Appx0029-30; *see* Br. 58-59. Indeed, the district court expressly confirmed that the '951 patent had "no bearing" on its decision for the '043 patent. Appx0030. It further observed that the infringing products are the same for each asserted patent, so the "practical effects" of the injunction are the same regardless of whether the '951 patent is included. *Id.* Thus, Evenflo cannot credibly assert that the injunction is overbroad. This purported issue is therefore moot and provides no basis for relief on appeal. *See Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th

---

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) (noting *eBay*'s "abolition of categorical rules").

1069, 1076 (Fed. Cir. 2021).

**2. The District Court Properly Found that Evenflo Causes Irreparable Harm to Wonderland**

Evenflo improperly asks this Court to reweigh the evidence as to irreparable injury based on repeated mischaracterizations of the record. Evenflo repeatedly asserts that "no evidence whatsoever" and "nothing in the record" supports the district court's findings of irreparable harm and causal nexus, but Evenflo is wrong. Br. 59-63. The district court's nineteen-page opinion identifies ample evidence in its analysis of the *eBay* factors, including irreparable harm and causal nexus. *See, e.g.*, Appx0001-19. At bottom, Evenflo merely presents a list of disagreements with the district court's factual determinations—nowhere near the "clearly erroneous assessment of the evidence" required to disturb the injunction on appeal. *Genband US LLC v. Metaswitch Net. Corp.*, 861 F.3d 1378, 1381 (Fed. Cir. 2017).

Evenflo first asserts that "nothing in the record" addresses the harm to Graco's reputation and how that reputational harm impacts Wonderland, Graco's longtime sole supplier of car seats. Br. 59-60. But as the district court held, "Wonderland has put forth a significant body of testimony and evidence supporting its claims of lost sales, market share, and reputation." Appx0008. The district court enumerated the specific trial testimony of four separate individuals supporting its conclusion. Appx0008-10. Evenflo challenges the persuasiveness of the testimony of one of those individuals, but it fails to even acknowledge the other cited testimony

personally witnessed by the district court—including the testimony of Evenflo's own witnesses. *Compare* Br. 60, *with* Appx0008-10.

Evenflo also insists that Wonderland did not brief Graco's reputational harm and its effect on Wonderland, Br. 60, but that is demonstrably false. As Wonderland argued, supported by evidence from the trial record, reputational harm to the Graco brand ultimately results in unquantifiable lost sales for Wonderland, including car seats and other children's products exclusively designed and manufactured by Wonderland for Graco. *See, e.g.*, Appx4974. The district court agreed, explaining that "[w]hile such reputational and product-specific factors are likely to impact Graco more directly, they still cause Wonderland irreparable harm because of Graco and Wonderland's close working relationship and exclusive supplier arrangement." Appx0010. Thus, far from "non-existent, vicarious harms to Wonderland," Br. 59, the district court expressly held that "Wonderland will be directly injured" by Evenflo's infringing activities in the marketplace. Appx0009.

Evenflo similarly asserts that "nothing in the record" establishes that Wonderland lost sales of other children's products it designs and manufactures for Graco. Br. 60-61. As Wonderland argued, supported by the trial testimony from multiple witnesses, "[w]hen a parent selects Evenflo's infringing car seat over Graco's car seat, Graco loses an opportunity to develop a relationship with that parent," resulting in "lost sales of follow-on purchases of other Graco products,

including the strollers, play yards, and high chairs supplied by Wonderland." Appx4973-74. Evenflo again attacks the testimony of just one of those witnesses, Ms. Wang, whom the district court specifically credited. Appx0009. Thus, Evenflo's challenge ignores the supporting testimony of other trial witnesses and improperly asks this Court to replace the district court's credibility determination with its own, based on nothing more than a cold transcript.

Evenflo further attempts to relitigate the district court's factual determination that Graco lost sales and share of car seat products. Br. 61-62. Evenflo's attorneys present their post-hoc interpretation of a trial exhibit not even discussed by the district court. *Id.* (unsupported attorney argument that market share drop was due to COVID-19 pandemic, and that share ultimately increased year-over-year). As an initial matter, Evenflo's attorney argument fails to acknowledge, much less address, the sworn trial testimony of Kerry Strzelecki discussing that exhibit. Appx4973-74, Appx6310-12. Evenflo also fails to challenge other evidence expressly credited by the district court, including the testimony of Evenflo's own witnesses that "Graco is one of Evenflo's top competitors in the U.S. market for car seats," that "the accused products were developed specifically to compete directly with Graco's products," and that "Evenflo deliberately developed its [infringing] products to be priced lower than Graco's products." Appx0008-10 (citing Appx5885-91, Appx5727-28, Appx5996).

Evenflo again attacks Ms. Wang, this time for purportedly failing to specifically "enumerat[e]" the lost sales. Br. 62. Evenflo's complaint about Ms. Wang's testimony is misplaced. Causal nexus merely requires "some connection" between the harm and the infringing acts, not a quantitative assessment showing but-for causation. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015). Referencing the trial testimony of Ms. Wang and several other witnesses, the district court held that "Wonderland's witnesses at trial provided significant testimony asserting that Wonderland has been, and will continue to be, directly harmed as a result of Evenflo's infringement of the Asserted Patents." Appx0008. Evenflo's pointless critique of the specificity of Ms. Wang's testimony is inadequate to disturb the district court's determination.

Finally, Evenflo avers that the district court "failed to consider other factors weighing against irreparable harm." Br. 62-63. Evenflo recycles flawed arguments previously addressed in the parties' briefing below, and merely speculates that the district court failed to consider them. *Id.*; *see* Appx7068-70 (addressing same arguments regarding practice of patents, multiple competitors, and sales to Graco). But in denying Evenflo's requested stay, the district court explained that it "considered and reviewed each of the Parties' arguments, even if the specific argument is not directly addressed in this Order." Appx0043. In any event, Evenflo fails to explain how its laundry list of meritless arguments establishes a "clearly

erroneous assessment of the evidence" sufficient to disturb the district court's order.

### 3. The District Court Properly Found that Remedies at Law are Inadequate

Evenflo contends that the district court erred because the jury's verdict included a running royalty adequate to compensate Wonderland going forward. Br. 63. Evenflo never presented this argument to the district court, so it is forfeited. Indeed, Evenflo took the opposite position before the district court, arguing that Wonderland is not entitled to any royalty for future infringement. Appx6945, Appx6962 (arguing that "Wonderland … has failed to meet its burden to show it is entitled to ongoing royalties."); *see* Appx6974-75 (arguing against supplemental damages to effective date of injunction). Regardless, the jury's verdict does not, and cannot, account for the irreparable harms to Wonderland from "lost sales, lost market share, and reputational loss," each of which is "difficult to quantify and for which monetary damages do not provide adequate compensation." Appx0012. Juries do not sit in equity, and Evenflo's belated reinterpretation of the jury's verdict is no basis to disturb the district court's order.

The injunction should be affirmed. If, however, the Court reverses or vacates any part of the injunction (including as to the '951 patent), Wonderland respectfully requests a remand for the district court to address Wonderland's alternative motion for an ongoing royalty. The district court did not address the ongoing royalty because it granted the injunction. Appx0019; *see* Appx4979-85.

## II. WONDERLAND'S CROSS-APPEAL

### A. Standard of Review

The Federal Circuit reviews the denial of a motion for a new trial under the law of the regional circuit. *Finjan*, 626 F.3d at 1202. The Third Circuit reviews denial of a motion for a new trial for an "abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary." *Id.* The district court abuses its discretion when its "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019) (internal quotation and citation omitted). A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FRCP 59(a). This includes the erroneous exclusion of evidence that affected "a substantial right" of a party. *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994).

### B. A New Trial on Willful Infringement is Warranted

In 2017, a Job Title from Evenflo's parent corporation notified Evenflo that one of the Accused Products might infringe claim 1 of the '043 patent (the "Dracula Email"). Appx3785-3805. Before trial, despite the email's clear relevance to Evenflo's subjective intent to infringe, the district court excluded the email and related testimony as more prejudicial than probative. Appx4008; *see* Fed. R. Evid. 403. This error severely impacted Wonderland's ability to present a full picture of

Evenflo's conduct. The jury found no willful infringement, Appx0110, and, following trial, the district court denied Wonderland's motion for new trial, confirming its exclusion of the Dracula Email, Appx0057-58. Reversal and remand is warranted for a new trial on willful infringement and assessment of enhanced damages.

#### 1. The Dracula Email is highly probative of Evenflo's subjective intent

Willful infringement requires "no more than deliberate or intentional" infringement. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021). It must be more likely than not that the accused infringer both knew of the asserted patent and "acted despite a risk of infringement that was either known or so obvious that it should have been known." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotation marks and citation omitted); *see Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 579 U.S. 93, 105 (2016). Here, Evenflo stipulated to knowledge of the '043 patent as early as 2014, around the time Evenflo began development of Evenflo's first 3-in-1 Product. Appx0075; *see* Appx7541-43. This left only Evenflo's intent to infringe the '043 patent in dispute.

The Dracula Email was Wonderland's key piece of direct, contemporaneous evidence of Evenflo's subjective intent. The Dracula Email was sent in 2017—when the Accused 3-in-1 Products were on the market, but prior to the release of the 4-in-1

Products. Appx3785; *see* Appx5876-80, Appx6005-06. The email chain discusses "Project Dracula," a Competitive Information [redacted] car seat for Evenflo's parent company, Goodbaby. Appx3785-3805. As part of the ongoing discussion, a Job Title from Goodbaby identifies the '043 patent as the "Graco Nautilus Patent"; quotes asserted claim 1 in its entirety; notes the claim is Competitive Information [redacted]; and suggests that an Accused Product may "involve" the same technology. Appx3786. She asks how to Competitive Information [redacted] the claims of the '043 patent Competitive Information [redacted] Appx3786. She sends the email to multiple Evenflo employees responsible for the design and development of the Accused Products, including the addressee, Name, and Name. *Id.* No one responded to the email in writing, *see* Appx3785-86, and Evenflo confirmed that it made no subsequent efforts at redesign since the discussion in the email, Appx5903.

The Dracula Email and related testimony are thus highly relevant to whether Evenflo was on notice of its risk of infringement (it was) and whether it did anything to change its conduct (it did not). Indeed, according to the email, Evenflo's product development team specifically contemplated infringement of claim 1 of the '043 patent because of the way Evolve's Competitive Information [redacted] to Competitive Information [redacted]—one of the inventive features of the '043 patent, and the crux of Evenflo's non-infringement defense. Appx3786; *see also* Br. 37-38. Wonderland was entitled to show the jury that Evenflo received this specific warning—from a Job Title of its own

parent corporation—and did nothing. Evenflo "acted despite a risk of infringement that was either known or so obvious that it should have been known." *Arctic Cat*, 876 F.3d at 1371; *see Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (evidence on "state of mind at the time of the accused infringement" is "an issue for the jury").

#### 2. The Dracula Email is substantially more probative than prejudicial

Before trial, the district court concluded that the Dracula Email's probative value was substantially outweighed by its risk of prejudice to Evenflo, and excluded the Email chain in its entirety, to avoid "Rule 403 issues." Appx4008; *see* Appx0057-58. This was an abuse of discretion, predicated on errors of fact and law.

##### a. The district court erred in evaluating the email's probative value

The district court concluded that the Dracula email had "low probative value" because Evenflo stipulated that it was aware of the '043 patent, the email was "unclear exactly which portion of the Evolve seat" infringed, and no Evenflo employee agreed with the assessment. Appx0057-58, Appx4007-08. This was predicated on legal and factual errors.

First, as Wonderland argued to the district court, the Email goes to "Evenflo's subjective intent" to infringe the '043 patent, whether Evenflo "'knew or should have known' that it was running a substantial 'risk of infringement.'" Appx4862.

Willful infringement requires evidence of both knowledge of the patent and intent to infringe. Evenflo's stipulated knowledge of the '043 patent does not decrease the email's probative value.

Second, the email does identify "exactly which portion of the Evolve seat" infringes, Appx4007-08—in quotation marks, the email identifies "Competitive Information [redacted] of Competitive Information [redacted] … to Competitive Information [redacted]." Appx3786.

Third, the lack of "communication from any Evenflo employee agreeing with" the assessment does not decrease the email's relevance. Appx4008. Willful infringement is "a measure of reasonable commercial behavior in the context of the tort of patent infringement," including failure to act in the face of obvious risk. *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996); *see Arctic Cat*, 876 F.3d at 1371. The fact that Evenflo took no action, continued to sell the Evolve car seats, and developed additional infringing products after receiving this email's warning, is highly probative to the jury's willfulness inquiry.

**b. The district court abused its discretion in excluding the Dracula Email**

The district court concluded that the Dracula Email is "substantially prejudicial" because the email was written by someone who is not "a native English speaker"; it involved "companies and products that are unrelated to the litigation"; and there are issues with "hearsay" and a reference to a "lawyer letter." Appx0057-

58, Appx4007-08. Again, this conclusion was predicated on legal and factual errors, and any prejudice to Evenflo could have been eliminated through redactions.

First, the district court erred in substituting its own interpretation for that of Evenflo recipients and witnesses as to whether the email was "difficult to decipher" because the drafter is bilingual. Evenflo's extended collaboration and correspondence with the drafter—as shown by the email itself—suggest there was no such communication barrier. "The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province" of the jury. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).

Second, the email does not involve multiple "companies and products" unrelated to the litigation. The only companies referenced are Graco, Evenflo, and Evenflo's parent company, Goodbaby. All three were discussed at trial without confusion. The only products referenced are Graco's Nautilus, Evenflo's Evolve, and Goodbaby's Dracula. The first two products were discussed at trial, and references to "Dracula" could be solved with a jury instruction or redaction. *See TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 789 (Fed. Cir. 2019). Similarly, any prejudice from the reference to a "lawyer letter," appearing in a separate email, could be mitigated through jury instruction or redaction. Even where an infringer claims privilege, willfulness must be determined on "the totality of the

circumstances." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004).

Third, the district court's "hearsay" concern was unfounded. Wonderland did not offer the Dracula Email for the truth of the matter asserted, *i.e.*, that Evenflo's car seats infringe the '043 patent. Fed. R. Evid. 801(c)(2). Wonderland offered the email to demonstrate the statements were made—the Evenflo product development team received these warnings of infringement, and then did nothing. *United States v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015) (statements offered to show notice are not hearsay because they are "not offered for their truth").

Because of these errors, the district court could not undertake the "careful balancing required by Rule 403." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). The probative value of the Dracula Email substantially outweighs any risk of prejudice or jury confusion. It was an abuse of discretion to exclude the Email. "Unduly sterilizing a party's trial presentation can unfairly hamper [its] ability to shape a compelling and coherent exposition of the facts." *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 314 (3d Cir. 2004)

#### 3. The exclusion of the Dracula Email affected Wonderland's substantial rights

The district court's exclusion of the Dracula Email affected the jury's verdict on willfulness, as it was never possible that Wonderland could "elicit the same evidence" from the Evenflo witnesses who would testify at trial. *See* Appx4008;

*Glass*, 34 F.3d at 191 (erroneous exclusion of evidence "is harmless only if it is highly probable that the error did not affect the outcome of the case"). On the eve of trial, Evenflo declined to produce the addressee of the email, [redacted], and Wonderland was not permitted to present his deposition testimony on the email. Appx4454, Appx4459-64. Without the Dracula Email at trial, Wonderland could only elicit testimony from Jon Conaway that he and "several other Evenflo engineers had seen claim 1 of the '043 patent as of at least February 17, 2017." Appx6005-06. This is not the "same evidence" as the Dracula Email and its notice of potential infringement.

The Dracula Email is direct, contemporaneous evidence of notice of infringement and, thus, subjective intent, that Evenflo cannot evade or twist or soften. Evidence "has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Diet Drugs*, 369 F.3d at 314 (quoting *Old Chief v. United States*, 519 U.S. 172, 187 (1997)). The "persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them." *Old Chief*, 519 U.S. at 187.

Evenflo filled the gap left by the Dracula Email with self-serving testimony as to intent that Evenflo believed they did not do "anything wrong." Appx6047.

Despite evidence of tear-downs and copying the Graco Nautilus and Graco4Ever, Evenflo was able to lean on the stipulation that "competitive research, including breaking down and testing competitors' products" is "commonplace" and that "[b]oth Evenflo and Wonderland engage in competitive research." Appx0075. Evenflo was not forced to grapple with the clear differences in degree and character between its "competitive research" and Wonderland's product development process. *Compare* Appx5562 (looks at competitor products to make sure their own design is "new and novel"), *with* Appx7541-43 (Evenflo "developed" seat "with potential to compete for Graco Nautilus business" with "many of the same features" to be "integrate[d] into [the Evenflo] seat"); Appx5876-80, Appx5900, Appx5998-99. Nor was Evenflo forced to grapple with the potential fall-out of its copying, despite clear notice of infringement of the "Graco Nautilus patent."

Further, without a willful infringement verdict, Evenflo as a "calculating infringer" was empowered to treat the jury's damages verdict like a forced license. *Presidio Components, Inc.*, 702 F.3d at 1362; *see* Appx0011 (noting Wonderland's policy of not licensing its patents to third parties). Specifically, more than a month after the jury's infringement verdict, Evenflo "made the decision to enter a new [one-year] product cycle," "knowing that Judgment had been entered finding that the Accused Products infringed" and "aware that Wonderland sought a permanent injunction." Appx0041. Evenflo conceded this point, when it attempted to rely on

those same post-verdict contracts to avoid the consequences of the district court's injunction. Appx0041. This is willful infringement—Evenflo continued to sell products it knew to be infringing to capture further sales and market share. Enhanced damages under 35 U.S.C. § 284 are meant to deter such intentional, bad-faith conduct. *Halo*, 579 U.S. at 104. The jury should be able to consider these new facts, in the willfulness context, in the first instance.

The district court thus erred in excluding the Dracula Email and related testimony, and abused its discretion in denying Wonderland a new trial on willful infringement. Reversal and remand on willfulness, and assessment of enhanced damages, is necessary to correct these errors.

## CONCLUSION

The jury's infringement verdict and the district court's injunction should be affirmed. All that remains is to remand for a new trial on willful infringement.

Dated: January 24, 2024

Respectfully submitted,

*/s/ Shamita Etienne-Cummings*

Shamita Etienne-Cummings
David M. Tennant
James P. Gagen
Alan M. Billharz
Megan M. Ines
ALLEN & OVERY LLP
1101 New York Avenue, NW

Washington, DC 20005-3807
Telephone: (202) 683-3800
shamita.etienne@allenovery.com
david.tennant@allenovery.com
james.gagen@allenovery.com
alan.billharz@allenovery.com
megan.ines@allenovery.com

Bijal V. Vakil
ALLEN & OVERY LLP
550 High Street, Second Floor
Palo Alto, CA 94301
Telephone: (650) 388-1650

*Attorneys for Cross-Appellant*
*Wonderland Switzerland AG*

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2023-2043, 2023-2233, 2023-2326

**Short Case Caption** Wonderland Switzerland AG v. Evenflo Company, Inc.

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 01/24/2024

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile ☐ Other: ________

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Lauren Douville | douville@shb.com, SHB_WLEvenfloTeam@shb.com<br>Shook, Hardy & Bacon L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO 64108 |
| Aaron Hankel | ahankel@shb.com, SHB_WLEvenfloTeam@shb.com<br>Shook, Hardy & Bacon L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO 64108 |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 01/24/2024

Signature: /s/Shamita Etienne-Cummings

Name: Shamita Etienne-Cummings

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2043, 2023-2233, 2023-2326

**Short Case Caption:** Wonderland Switzerland AG v. Evenflo Company, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 16,444 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 01/24/2024

Signature: /s/Shamita Etienne-Cummings

Name: Shamita Etienne-Cummings

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2023-2043, 2023-2233, 2023-2326

**Short Case Caption:** Wonderland Switzerland AG v. Evenflo Company, Inc.

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 15 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 01/24/2024

Signature: /s/ Shamita Etienne-Cummings

Name: Shamita Etienne-Cummings